### WHITESIDE v. SUPREME CONCLAVE IMPROVED ORDER OF HEPTASOPHS.

(Circuit Court, E. D. Tennessee, S. D. February 4, 1897.)

INSURANCE ORDER—AGENCY OF SUBORDINATE OFFICERS—EFFECT OF BY-LAW.

An assessment life insurance order having a supreme conclave and subordinate conclaves provided in its constitution and by-laws that the officers of subordinate conclaves "shall at all times be deemed and held to be agents and servants of the members of the conclaves of which they are elected officers, and not, in any sense, the agents or servants of the supreme conclave for any purpose whatever," and that all acts of any such officers relating to a benefit certificate shall be held and deemed to be the act of the person holding such certificate, and shall not be binding on the supreme conclave. In an action on an insurance certificate issued to a member of a subordinate conclave, and payable, in the event of his death and good standing in the order, to plaintiff, his wife, her right to recover depended on the binding effect of an extension of time for paying an assessment, granted by the collector of assessments of the subordinate conclave. The collector had been in the habit of granting extensions to plaintiff's husband and other members without objection from any quarter. In reality he was the agent of the supreme conclave, and acted distinctly for it in the matter of collecting and remitting assessments. Held, that the provisions above quoted could not override the actual facts, and that defendant was bound by the extension.

The defendant is an assessment life insurance order, chartered in the state of Maryland, and having a supreme conclave in that state and subordinate conclaves located throughout various other states, one of which is in Chattanooga, Tenn.

Plaintiff's husband was a member of the Chattanooga Conclave, and held a certificate for $5,000, payable, in the event of his death and good standing in the order at the time, to his wife, the plaintiff. The husband was severely wounded by an accidental gunshot, and died, by reason thereof, some 30 days thereafter. When a claim was made by the plaintiff, the defendant denied all liability, assigning as a reason the failure of the husband to pay an assessment call, and that, under the defendant's constitution and by-laws, he thereby sus-

pended himself as a beneficial member, and the certificate was void. A suit was thereupon brought, resulting in a verdict and judgment against the defendant for the amount of the certificate. The defendant entered a motion for a new trial, predicating the motion upon certain parts of the court's charge to the jury. It appeared in evidence that under the constitution and by-laws of the defendant "any member failing to pay his assessment within thirty days from date of notice shall stand suspended," and that the officers of a subordinate conclave "shall at all times be deemed and held to be agents and servants of the members of the conclaves of which they are elected officers, and not, in any sense, the agents or servants of the supreme conclave for any purpose whatever," and that all acts of any such officers relating to a benefit certificate shall be held and deemed to be the act of the person holding such certificate, and shall not be binding upon the supreme conclave. It appeared further from the proof that O'Donohue, who was the collector of the assessments for Chattanooga Conclave, had been in the habit of extending the time in which the assessments were required to be made by the by-laws, and that he had often granted this extension to plaintiff's husband and other members. On the day preceding the gunshot wound, the deceased met O'Donohue on the street, and there was a conflict among the witnesses as to what occurred, but the proof tended to show that O'Donohue said: "You can pay me, judge, any time in the next few days. I am, though, sending the money off to-day." A few days after the accident, plaintiff's husband caused the past-due assessments to be tendered to O'Donohue, who declined to accept the money. Later a tender was made through the mails, and accompanied by a letter from plaintiff's husband, calling O'Donohue's attention to what he had said when the meeting occurred on the street. O'Donohue returned this money by a letter, in which he said merely that under the circumstances he could not accept it. There were other facts bearing upon other issues in the case, but such are not material upon the court's action on the motion for new trial. The court charged the jury that, notwithstanding the provisions of the constitution and by-laws, O'Donohue was the agent of the supreme conclave in the matter of collecting the assessments, and that his acts in extending time of payment were binding on the defendant. The court said, in substance, that it was not competent, by declaration made in advance, to deny the real fact and its effect, and require the court to hold what is known to be contrary to the truth. This would be neither good law nor good morals. When officers of the local order act distinctly for the general order, as in collecting and remitting assessments, the court and jury must not be expected to find directly against the plain truth. Exemption from liability must be claimed otherwise than upon a false statement of fact.

Thomas & Thomas, for plaintiff.

Geo. T. Fry and S. A. Will, for defendant.

CLARK, District Judge (after stating the facts). I have now considered the motion for a new trial in this case. The plaintiff's able and industrious attorneys, in the brief on this motion, have discussed the same questions which were considered on the trial, except that there has been a very full examination of the authorities, as the brief shows. There was, fortunately, but slight difference between the court and the defendant's attorneys as to the law applicable to the case. This difference related solely to the question of the power of O'Donohue, the financial collector and officer of the local order, to extend the time in which members might pay their assessment without exacting a forfeiture in case an assessment should not be paid on the precise date of its maturity. The argument was that the rules and by-laws of the order denied to Mr. O'Donohue this power. The court was of opinion that, applying to these orders the ordinary law of life insurance, Mr. O'Donohue might waive a provision of the kind

named in the constitution and by-laws, and particularly when his action in this regard was supported by a long habit of doing so with members without objection from any quarter; and the jury was instructed accordingly upon this point.    I find nothing on this motion which has been sufficient to change my view of this.    As was stated on the trial, I find the view which I hold upon this point amply sustained by a recent opinion of the supreme court of Tennessee.    The only other disagreement that existed, or now exists, in the case, is a disagreement between the defendant and the jury, and this relates to the facts, and relates to a point in respect of which there was a conflict in the testimony.    This conflict was mainly between V. S. Whiteside, a witness for the plaintiff, and O'Donohue, witness for the defendant, and related to assessment No. 156.    On January 31, 1896, Hugh Whiteside wrote a letter to Mr. O'Donohue, in which were contained precisely the same statements made by V. S. Whiteside on the witness stand; and in his answer to that communication Mr. O'Donohue did not deny a single statement in the letter.    So that in this respect Mr. V. S. Whiteside is strongly corroborated.    In addition to that, the proofs made it very plain that Mr. O'Donohue was mistaken about a previous assessment, namely, No. 155, in regard to which he was just as positive as he was in regard to No. 156; and the records of the conclave, as far as any were kept, did not sustain Mr. O'Donohue's testimony.    I think the jury were well warranted in believing what Mr. Whiteside said upon this subject.    Indeed, I do not well see how they could have found otherwise upon this point of conflict.

There was no objection to the charge of the court as made to the jury, and the attention of one of the defendant's attorneys was called to the fact of the necessity of making such objection at the time, if there existed any.    It was within the peculiar province of the jury to pass upon the facts about which there was a conflict, and I do not perceive that there is anything in the case upon which I can disturb the verdict of the jury.    Motion for a new trial is consequently overruled.