MODERN WOODMEN OF AMERICA v. TEVIS et al.

(Circuit Court of Appeals, Eighth Circuit. September 30, 1901.)

No. 1,514.

1. INSURANCE—ESTOPPEL FROM FORFEITING FOR DEFAULT IN PROMPT PAYMENT.

The habitual acceptance of premiums by an insurance company after they are due estops it from enforcing a forfeiture for default in prompt payment.[1]

2. BENEFICIARY ASSOCIATION—ESTOPPEL BY LIKE COURSE OF ACTION.

A fraternal beneficiary association, which, by its uniform course of collection, leads its members to believe that the strict terms of their certificates and of its by-laws relative to the prompt payment of assessments and the avoidance of the certificates therefor are not and will not be enforced, is estopped from defeating the claim of beneficiaries upon the certificate of a deceased member for default in prompt payment where he had paid his assessments in due time according to the customary course of collection, but had, without notice of any change in this course, failed to pay some of them according to the strict terms of the by-laws and the certificate.

3. PRINCIPAL AND AGENT—LEGAL RELATION PREVAILS OVER ABANDONED STIPULATIONS.

The actual legal relation of parties to each other, their acts and transactions, prevail over previous written stipulations, which were subsequently disregarded, and condition their rights.

---

[1] Waiver by acceptance of premiums, see note to Clearing Co. v. Bullock, 33 C. C. A. 369.

111 F.—8

**4. SAME—BENEFICIARY ASSOCIATION—CLERK OF LOCAL CAMP.**

Where a beneficiary association empowers the clerk of a local camp to collect, receipt for, remit, and report upon its benefit assessments, and the clerk acts under this authority with the knowledge and consent of all parties, the relation of principal and agent for this purpose exists, and conditions the rights of the parties, notwithstanding the fact that the by-laws and certificates of membership contain a uniformly disregarded stipulation that the clerk of the local camp shall not be the agent of the association, but shall be the agent of the local camp, which has no interest in the benefit assessments, and that the acts or omissions of the clerk shall not affect the liability or waive any of the rights of the association.

**5. SAME—CUSTOM OF CLERK.**

The habitual collection by the clerk of the local camp of a fraternal beneficiary association of its benefit assessments within 1 month and 20 days after the time when, by the by-laws of the association and the terms of the certificates, the assessments become due, the members become suspended, and their certificates avoided, waives prompt payment thereof, and estops the society from maintaining that the members were suspended, and that their certificates were avoided, within this customary period of extension of the time of payment.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

C. G. Laybourn (J. W. White, John Sullivan, and E. C. Ellis, on the brief), for plaintiff in error.

James D. Harkless (John O'Grady and Charles S. Crysler, on the brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge.  Does the habitual collection by the clerk of a local lodge of a fraternal beneficiary association of the benefit assessments within 1 month and 20 days after the time when, by the by-laws of the association and the terms of the certificates, they become due, and the members become suspended, and their certificates avoided, waive prompt payment thereof, and estop the society from maintaining that the members were suspended, and that their certificates were avoided, within the customary period of extension of the time of payment?  This is the issue presented by the case in hand.  The Modern Woodmen of America is a fraternal beneficiary society governed by the head camp, which is a representative body composed of its elective officers, its general attorney, standing committees, and delegates from state camps.  It is the lawmaking body of the organization, and its board of directors and its head consul and head clerk are empowered to levy and collect from its beneficial members the assessments necessary to pay the amounts due to the beneficiaries of its deceased members.  The state camps are composed of delegates from the local camps, and the local camps and their officers are the means by which the society secures its members and collects the benefit assessments upon which it relies for existence.  These local camps are composed of the individuals upon whose membership and payments the welfare and success of the association depend.  Their chief executive officers are consuls

and clerks, and it is one of the duties of these clerks to keep the accounts, collect the benefit assessments, and remit them to the head camp. This is an action by the beneficiaries named in a certificate of this association issued on March 31, 1899, to M. W. Tevis, a member of Poplar Camp, No. 3,794, who died on August 10, 1899. By this certificate the society promised that the defendants in error should, in case of the death of Tevis while in good standing, participate in the benefit fund of the association to the amount of $3,000, on condition, among other things, that the certificate should be subject to forfeiture for any of the causes prescribed in the by-laws, and should be void if Tevis failed to pay to the clerk of his camp every benefit assessment levied upon him on or before the 1st day of the month following the date of the notice of its levy. The by-laws of the society provide that the clerk of the local camp shall collect and receive for the head camp all benefit assessments levied, keep the records and accounts of the local camp, and report to the head camp his collections for it, and the members of his camp that are delinquent in the payment of each assessment (sections 260, 261, 263); that the clerk of the local camp is the agent of such camp, and not the agent of the head camp, and that no act or omission on his part shall have the effect of creating a liability of the society, or of waiving any right or immunity belonging to it (section 271); that no officer of the society or of any local camp can waive any provision of the by-laws which relates to the substance of the contract for the payment of benefits (section 34); that any beneficial member who fails to pay any benefit assessment on or before the 1st day of the month following the date of the notice thereof is thereby ipso facto suspended, and his benefit certificate is "absolutely null and void during such suspension" (section 46); that the clerk of the local camp shall report all members who fail to pay any assessment when due to his camp and to the head camp as delinquent and suspended, and that the head clerk shall immediately notify every such member of his suspension, and inform him of the requirements necessary for his reinstatement (sections 260, 264, 114); and that any suspended member in good health may be reinstated within 60 days from the date of his suspension by paying all arrearages due and furnishing his written warranty that he is in good health (section 49). During all the time that the deceased was a member of this society the local camp to which he belonged and its clerk persistently and uniformly disregarded every provision of these by-laws and of his certificate of membership which relates to the suspension of members for failure to pay the benefit assessments when due. While the by-laws provided that every member who failed to pay on the last day fixed therefor by the notice was thereby suspended, and his certificate was void, so that he could be reinstated only by payment of arrearages and by furnishing a warranty of good health, this local camp enacted and operated a by-law in direct violation of these provisions to the effect that one assessment for each delinquent member should be paid by the local camp, so that his delinquency was never treated as a suspension of his membership, or an avoidance of his certificate, and was never reported to the head clerk. While the by-laws pro-

vided that the local clerk should report as suspended every member who failed to pay an assessment on the last day fixed therefor in the notices of assessment, and that the head clerk should thereupon notify the delinquent of his suspension, and of the necessary requirements for his reinstatement, the clerk of this local camp never reported any one suspended who was delinquent in paying but one assessment on account of the by-law of the local camp, and never reported any one suspended who was delinquent in paying a second assessment if he paid it within 20 days after it was due. The course of collection uniformly pursued by the clerk when Tevis was a member was this: The assessments were due on or before the 1st days of the respective months specified in the notices calling them. The clerk did not send his report of collections under any assessment to the head clerk, or remit the proceeds to the head banker, until the 20th day of the month on the 1st day of which it was due; and he invariably received from any delinquent member, without any warranty of health, the assessment levied upon him if he paid it after the 1st and at any time before the 20th of the month, and he never reported or treated such a delinquent member as either delinquent or suspended.

When tried by this habitual course of business, this invariable custom adopted by this local camp and its clerk, all the assessments of Tevis were paid in due time; but when tried by the literal terms of the by-laws and the certificate he was delinquent in the payment of every assessment but the first, which he paid in March, when he received his certificate. On May 1, 1899, assessment No. 3 fell due, and he did not pay it, but he was not reported suspended, because the local camp paid it for him under its by-law. On June 1, 1899, assessment No. 4 fell due, and he did not pay it; but he was not reported suspended or treated as delinquent, because before the clerk of the local camp sent to the head camp his report and remittance of the collections under this assessment, and on June 2, 1899, he paid, and the clerk accepted, both these assessments without any warranty of good health. Assessment No. 5 fell due on July 1, 1899, and Tevis did not pay it, but he was not reported suspended, because the local camp paid it for him under its by-law to that effect. On August 1, 1899, assessment No. 6 fell due, and he did not pay it, but he was not reported suspended nor treated as delinquent, because it was the invariable custom of the clerk of the local camp to treat no member as delinquent and to report no one suspended who paid before he sent off his report on the 20th of the month. Before that day arrived, and on August 10, 1899, Tevis died. On the morning of the day of his death, and while neither of them knew that he had died, his brother paid, and the clerk of the local camp received, the last two assessments without any warranty of good health. But it is conceived that this payment is immaterial, and that the rights of the parties are the same as they would have been if no such payment had been made. Upon this state of facts the plaintiff in error contended that Tevis was suspended, and that his certificate was void, because he had not paid assessment No. 6 on or before August 1, 1899. The court below instructed the jury that the association was estopped from maintain-

ing this defense, and this is the ruling challenged by the writ of error.

Did not the Modern Woodmen, by its course of action, waive the prompt payment of these assessments, and the stringent provisions of its by-laws relative to the avoidance of the certificate? Usually the basis of waiver is estoppel. One who, by his acts, or by his silence when he ought to speak out, willfully or recklessly induces another, who has a right to rely on his course of action, to believe that certain facts exist, or that a certain course of dealing has been and will be uniformly followed, and to act on that belief, so that he will be injured if it proves false, is estopped from denying its truth. Habitual acceptance of premiums by an insurance company after they are due waives payment on the day. Any course of action by a society which leads one liable to a forfeiture .honestly and rightfully to believe that by conformity thereto a forfeiture will not be incurred, followed by conformity, will estop the association from enforcing the forfeiture; and a fraternal beneficiary association, which, by its uniform course of dealing with its members, leads them to believe that the strict terms of, their certificates relative to the prompt payment of assessments and the avoidance of the certificates are not and will not be enforced, is thereby estopped from defeating the certificate of a deceased member for default in prompt payment when he has paid his assessments in due time according to the customary course of collection, but, without notice of any change in this course, he has failed to pay some of them according to the strict terms of the by-laws and the contract. Spoeri v. Insurance Co. (C. C.) 39 Fed. 752; Hanley v. Association, 69 Mo. 380; Insurance Co. v. Eggleston, 96 U. S. 577, 24 L. Ed. 841; Thompson v. Insurance Co., 104 U. S. 259, 26 L. Ed. 765; Insurance Co. v. Doster, 106 U. S. 37, 1 Sup. Ct. 18, 27 L. Ed. 65; Insurance Co. v. Wolff, 95 U. S. 333, 24 L. Ed. 387. Under these familiar rules, the uniform practice of this society during all the time the deceased was a member of it to permit the local camp to pay the first delinquent assessment, and to collect the second at any time within 20 days after it fell due, without suggesting or enforcing any suspension or forfeiture, estopped it from changing its course of dealing and defeating this certificate, without previous notice to the deceased member, upon a ground which its customary course of collection must have led him to believe was waived.

It is claimed, however, that this habitual practice of waiving the forfeiture and extending the time of payment of these assessments for a month and 20 days after that specified in the notice was not the act of the Modern Woodmen, but that of the local camp and its clerk, without the knowledge of the society, for which the latter was in no way responsible. In support of this contention attention is sharply called to the provisions of the by-laws that the clerk of the local camp is the agent of that camp, and not of the head camp; that no act or omission on his part shall have the effect of creating a liability of the society, or of waiving any right or immunity belonging to it; and that no officer of the society or of any local camp can waive any provision of the by-laws which relates to the substance of the contract for the payment of benefits; and it is confidently argued that these by-laws, which it is conceded constitute a part of the con-

tract between the association, the deceased, and the beneficiaries, prevented the existence of the relation of principal and agent between the society and the clerk of the local camp, and left the Modern Woodmen unaffected by his knowledge or his acts. Let us see. While this contract was in existence, the Modern Woodmen made the assessments over which this controversy arises, sent notices of them to this local clerk, empowered and required him to collect and receipt for them for it, to pay their proceeds, and to report his action to the head camp. The moneys which this clerk collected on these assessments were not the property of the clerk or of the local camp. They were the moneys of the Modern Woodmen. If the clerk had misappropriated the proceeds of these assessments, the society could have proceeded against him, as its agent, either civilly or criminally. A contract is not perpetual or immutable. Those who make can mar or modify, and their subsequent agreements or their intentional acquiescence in its abandonment or modification have that effect. It follows that, if it could be conceded that the contract evidenced by this certificate deprived the local clerk in its inception of the powers of an agent of the corporation to collect these assessments for it, the subsequent acts of the parties necessarily again conferred them upon him. But did the agreement ever deprive the local clerk of the authority to collect and remit these assessments? The by-laws themselves conferred upon him the power, and imposed upon him the duty, of collecting and receipting for the assessments in the name of the Modern Woodmen, and of remitting the proceeds and reporting the collections, delinquencies, and suspensions to that society. Under this authority the clerk of the local camp of the deceased discharged these duties with the full knowledge and consent of the association and the members. The by-laws which delegated this power were a part of the contract between the beneficiaries, the deceased, and the society from its beginning. They created the relation of principal and agent between the Modern Woodmen and the local clerk, and the parties constantly exercised the powers and discharged the duties of that relation under this delegation. Did the fact that in the same contract which created this relation these parties stipulated that it did not exist destroy it, or relieve any of the parties to it who subsequently acted in that relation from the duties and obligations it imposed? If A. is in fact the lessee of B., and they stipulate with C. that A. is not the lessee of B., but is the lessee of C., and thereafter, with the consent of all parties, A. continues to attorn and pay his rent to B., does the abandoned stipulation change the legal relation? If E. is in fact the vendee of F., and they agree with G. that E. is not the vendee of F., but is the vendee of G., and thereafter, with the knowledge and consent of all parties, E. continues to act as the vendee of F., and pays to him the unpaid purchase price, are the rights of the parties governed by the disregarded stipulation or by their actual legal relation? If one appoints another his agent to collect moneys for him from a third person, and they agree with a fourth person that the appointee is not the agent of him who appoints him, but is the agent of the fourth party, and thereafter all the parties knowingly disregard the stipulation, and the agent collects the

money from the third person, and pays it over to the party who appointed him, are the rights of the parties conditioned by their actual legal relation or by the abandoned stipulation? The answers to these questions are not doubtful, and they conclude discussion of the claim that this clerk of the local camp, who was empowered by the Modern Woodmen to collect and remit to it, and who did collect and remit to it, its beneficial assessments, was not its agent for that purpose, and that he was the agent of the local camp, which never claimed or had any financial or other interest in these assessments, because these parties originally made a stipulation to that effect which they subsequently knowingly and uniformly disregarded. The clerk of the local camp was therefore the agent of this society to collect and remit these assessments, to report the collections, delinquencies, and suspensions. Whatever he did and said in the exercise of this authority was the act of his principal, the Modern Woodmen, and whatever knowledge he obtained in the discharge of this duty which was thus imposed upon him was the knowledge of his principal, the corporation. His habitual disregard of the provisions of the by-laws and of the certificate relating to the prompt payment of the assessments and the suspension of members for nonpayment, and his uniform extension of the time for the payment of the assessments for one month and 20 days after they were due by the terms of the notices, became the customary course of dealing of the society itself, upon which the deceased undoubtedly relied, and which the association cannot now be permitted to repudiate. Supreme Lodge v. Withers, 177 U. S. 260, 264, 265, 268, 275, 20 Sup. Ct. 611, 44 L. Ed. 762; McMahon v. Supreme Tent, 151 Mo. 522, 541, 52 S. W. 384; James v. Association, 148 Mo. 1, 49 S. W. 978; Whiteside v. Supreme Conclave (C. C.) 82 Fed. 275; Knights of Pythias v. Bridges (Tex. Civ. App.) 39 S. W. 333. According to the uniform method of collection pursued by the society and its agent, Tevis paid his assessments in time; and without previous notice to him of a change in this course of dealing the association was estopped from forfeiting his membership for his failure to pay them at the exact time fixed by the notices and the certificate.

There was no dispute concerning the facts in this case, and no facts were proved which would have sustained a verdict for the plaintiff in error, upon the defense which has been considered. The court below therefore properly instructed the jury to render a verdict in favor of the defendant in error upon this issue.

The judgment below is affirmed.