MODERN WOODMEN OF AMERICA v. TEVIS et al.

(Circuit Court of Appeals, Eighth Circuit. August 28, 1902.)

No. 1,514.

1. PRINCIPAL AND AGENT—LIMITATION OF AUTHORITY.

A principal may limit the authority of his agent, and when he does so the latter cannot bind his principal beyond the limits of his authority by contract, estoppel, or waiver, to those who know the limitations upon his power.

2. INSURANCE—PRINCIPAL AND AGENT—LIMITATIONS OF AGENT'S AUTHORITY BY POLICY OR BENEFIT CERTIFICATE.

Insurance companies and beneficial associations may limit the authority of their agents by provisions in their policies, or by by-laws which are a part of their contracts; and an agent whose powers are thus limited cannot bind his company beyond the limits of his authority by contract, estoppel, or waiver, to those who know the limitations upon his powers.

3 INSURANCE—PRINCIPAL AND AGENT—BENEFICIARY'S KNOWLEDGE OF LIMITA TIONS OF AGENT'S AUTHORITY.

The insured and the beneficiaries under contracts with insurance companies and beneficial associations are charged with knowledge of the limitations upon the powers of the agents of the companies which are found in the policies or certificates or in the by-laws or applications which are a part of their contracts, and they are bound by these limitations.

4. BENEFICIAL ASSOCIATIONS—LIMITATION OF AUTHORITY OF AGENT—LOCAL CLERK OF MODERN WOODMEN OF AMERICA.

The by-laws of the Modern Woodmen of America, which constitute a part of the contracts with its members and beneficiaries, provide that a member who fails to pay a benefit assessment at the time specified for its payment is ipso facto suspended, and his benefit certificate is thenceforth void; that he may be reinstated within a certain time, if in good health, by furnishing a warranty of that fact, and paying his arrearages; that the clerk of the local camp shall collect and remit to the head camp the assessments paid in accordance with the by-laws; that he shall report to the head camp suspended members; that he is the agent of the local camp, and not of the head camp; and that no act or omission by him shall create any liability or waive any immunity or right of the society. *Held*: (1) The clerk of the local camp is the agent of the head camp to collect and remit the benefit assessments in accordance with the terms of the by-laws. (2) His authority is limited by the by-laws, and the members and beneficiaries are charged with knowledge of these limitations, because they are a part of their contracts. (3) The clerk of the local camp has no authority by contract, estoppel, or waiver to bind the society to its members or beneficiaries either by extending the time of payment of a benefit assessment, or by waiving default in its payment, or by reinstating a suspended member without a warranty of good health, in the absence of notice or knowledge of such acts and acquiescence therein by some of the principal officers of the head camp.

5. BENEFICIAL ASSOCIATIONS—STIPULATIONS FOR PROMPT PAYMENT SUBSTANCE OF THEIR CONTRACTS.·

Stipulations to insure the prompt payment of benefit assessments constitute the substance and the essence of insurance contracts of beneficial associations.

¶ 4. Authority of insurance agents to waive prepayment of premiums, see note to Smith v. Society, 13 C. C. A. 292.

117 F.—24

6. BENEFICIAL ASSOCIATIONS—NOTICE OF ASSESSMENT.
　　The by-laws of the Modern Woodmen of America constitute a part of its contracts with its members and beneficiaries, and a service of a notice of assessment by mail in accordance with the terms of the by-laws is sufficient and effective.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Western District of Missouri.

L. C. Krauthoff and E. C. Ellis (J. W. White, John Sullivan, Frederick H. Bacon, and J. G. Johnson, on the brief), for plaintiff in error.

James H. Harkless (John O'Grady and Charles S. Crysler, on the brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. This is the second hearing of this case; the decision at the former hearing rested upon the opinion in Supreme Lodge v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762, which cited with apparent approval Whiteside v. Supreme Conclave (C. C.) 82 Fed. 275, a case which ruled the question involved in this action, Modern Woodmen of America v. Tevis, 111 Fed. 113, 119, 49 C. C. A. 256, 262. After the former decision of this case the supreme court handed down its opinion in Northern Assur. Co. v. Grand View Bldg. Ass'n, 22 Sup. Ct. 133, 145, 151–153, 183 U. S. 308, 46 L. Ed. 313, and thereupon a rehearing of this case was granted, and it has now been again argued and submitted.

This action rests upon a benefit certificate issued on March 31, 1899, by the Modern Woodmen of America, to M. W. Tevis, one of its members, who died on August 10, 1899. The defense of the society is that Tevis was suspended, and his certificate was void on August 10, 1899, when he died, because he had not paid an assessment upon him which fell due on August 1, 1899. Under the certificate the by-laws of the association constituted a part of the contract of membership and of insurance. Those by-laws provided that, if any beneficial member failed to pay any benefit assessment on or before the first day of the month following the date of the notice thereof, he was thereby ipso facto suspended, and his benefit certificate was "absolutely null and void during such suspension." Tevis failed to pay on August 1, 1899, or at any time before his death, an assessment the notice of which was dated July 1, 1899. The by-laws provided that the clerk of the local camp of which Tevis was a member should collect, receive, and report to the head camp all the benefit assessments paid in accordance with the provisions of the by-laws (section 201); that he should report to that camp as delinquent and suspended all members of his local camp who failed to pay any benefit assessment on or before the 1st day of the month following the date of the notice of its levy (sections 260, 261, 263); and that any suspended member in good health might be reinstated within 60 days from the date of his suspension by paying all arrearages due and

¶ 6. See Insurance, vol. 28, Cent. Dig. § 1854.

furnishing a written warranty that he was in good health (section 49). It had been the invariable custom of the clerk of this local camp to accept payments of benefit assessments from its members at any time within 20 days after they became due, without any warranty of good health, and without reporting them delinquent or suspended; and Tevis had paid one assessment on June 2, 1899, one day after it became due, in accordance with this custom. There was, however, no evidence that the head camp, or any of its officers, had any notice or knowledge of this custom, or of the fact that Tevis had made a payment when it was overdue without any warranty of good health. The by-laws provided that the clerk of the local camp was the agent of that camp, and that he was not the agent of the head camp; that no act or omission on his part should have the effect of creating a liability of the society, or of waiving any right or immunity belonging to it (section 271); and that no officer of the society or of any local camp could waive any provision of the by-laws which related to the substance of the contract for the payment of benefits (section 34). In this state of the case the trial court charged the jury that the clerk of this local camp was the agent of the head camp or of the society in collecting and receiving the benefit assessments; that his acts in connection therewith were the acts of the society, and were binding upon it, whether the head camp or its officers had notice of them or not; and that the company was estopped by the acts of this clerk in accepting overdue assessments, without warranties, from defeating this action on the ground that Tevis had failed to pay his July assessment when it was due.

At the former hearing in this court the question whether the clerk of the local camp was the agent of that camp or of the head camp was carefully considered, and the conclusion was reached that in the collection, receipt, and remittance of the benefit assessments the clerk of this local camp was the agent of the head camp, and not the agent of his local camp only. That position is not assailed on this rehearing. But it is earnestly contended that the terms of the contract with the beneficiaries of this insurance evidenced by the by-laws so limited the power of this agent that he could neither extend the time of payment of an assessment, waive a default in its payment, nor reinstate a suspended member without a warranty of good health; that the beneficiaries knew these limitations, because they were a part of the agreement of insurance which they accepted; and that no act of this agent beyond the limits of his authority prescribed by these by-laws either bound his principal or charged it with notice of his unauthorized acts. The by-laws are unquestionably a part of the contract, and they furnish a broad and substantial basis for this contention. They declare that this local clerk "shall receive and receipt for all moneys paid in accordance with the provisions of these laws" (section 261); that "no act or omission on his part shall have the effect of creating a liability on the part of this society, or of waiving any right or immunity belonging to it" (section 271); and that "no officer of this society, nor any local camp or officer thereof, is authorized or permitted to waive any of the provisions of these laws, or of any other laws of this society which relate to the substance of the contract for the.

payment of benefits between the members and the society, whether the same be now in force or hereafter enacted" (section 34). The argument of counsel for the defendants in error that the waiver of a default in the payment, or the extension of the time of payment, of an assessment, which results in the establishment of a liability for the entire amount of a certificate, where no liability would have existed in the absence of such a waiver or extension, is not of the substance of the contract for the payment of benefits, is unworthy of serious consideration. Its statement is its refutation. Fraternal insurance is temporary insurance,—insurance from the maturity of one assessment to the maturity of another,—and stipulations to insure promptitude in the payment of the assessments constitute both the substance and the essence of contracts for it. Klein v. Insurance Co., 104 U. S. 88, 91, 26 L. Ed. 662; Thompson v. Insurance Co., 104 U. S. 252, 258, 26 L. Ed. 765; Insurance Co. v. Statham, 93 U. S. 24, 30, 23 L. Ed. 789; McMahon v. Maccabees, 151 Mo. 522, 537, 52 S. W. 384; Harvey v. Grand Lodge, 50 Mo. App. 472, 479; Carlson v. Supreme Council, 115 Cal. 466, 475, 47 Pac. 375, 35 L. R. A. 643. The provisions of the by-laws which have been quoted are broad, positive, and unambiguous. They baldly prohibit the existence and the exercise by the clerk of the local camp of any authority to modify or to waive the provisions of the by-laws relative to the prompt payment of assessments and to the effect of defaults and suspensions. If, therefore, these express limitations upon the authority of this clerk were lawful and effective, he was without the power to extend the time of or to waive defaults in the payments of assessments, or to reinstate a suspended member without a warranty of good health; and the insured and the beneficiaries under the certificate here in suit were not ignorant of these limitations, because they were a part of the contract which they accepted, and upon which they base this action. It is a familiar and acknowledged principle of the law of agency that a principal may limit the powers of his agent, and that all parties who deal with the agent with knowledge of the limitation are bound by its terms. So the old question is presented whether a stipulation in a contract of insurance limiting the authority of the agent of an insurer is binding upon the insured and the beneficiaries. Conflicting arguments and opinions almost without limit might be cited upon this issue. It has long been the subject of debate in this court, and many of the authorities have been cited and reviewed in its opinions in support of the views of its members. Laclede Fire-Brick Mfg. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 9 C. C. A. 1, 8, 12, 60 Fed. 351, 358, 362; Insurance Co. v. Norwood, 16 C. C. A. 136, 145, 147, 148, 69 Fed. 71, 80, 82, 83; Insurance Co. v. Henderson, 16 C. C. A. 390, 69 Fed. 762; Northern Assur. Co. of London v. Grand View Bldg. Ass'n, 101 Fed. 77, 79, 80, 82–84, 41 C. C. A. 207, 209–214. The question became so important, and the opinions upon it so numerous and divergent, that the supreme court removed the case last cited to that court by a writ of certiorari, and in an elaborate and exhaustive opinion, in which many of the cases were cited and reviewed, rendered a decision which was evidently intended to close the discussion in the federal courts, and to finally

put this question at rest. The issue of law there presented was whether or not the provision in a policy of fire insurance that the policy should be void, unless otherwise provided by agreement indorsed thereon or added thereto, if the insured should have at the time of its issue or should thereafter procure other insurance, was waived or avoided by the fact that the agent of the company was aware, when he issued the policy, of the existence of other insurance, which was not indorsed thereon nor added thereto, in the face of a stipulation in the policy that "no officer, agent, or other representative of this company shall have power to waive any provision or condition of the policy except such as by the terms of the policy may be the subject of agreement indorsed thereon or added thereto," nor unless the agreement therefor is in writing, and indorsed upon or added to the policy. The majority of this court had answered this question in the affirmative, and in an earlier case had held that this stipulation was waived if the agent knew at the time of the issue of the policy that the insured intended to increase his insurance to a certain amount at some time subsequent to the delivery of the contract. Northern Assur. Co. of London v. Grand View Bldg. Ass'n, 101 Fed. 77, 79, 83, 84, 41 C. C. A. 207, 209, 213, 214; Insurance Co. v. Norwood, 16 C. C. A. 136, 145, 147, 148, 69 Fed. 71, 80, 82, 83. The circuit court of appeals for the Seventh circuit and the supreme courts of Massachusetts, New Jersey, and Kansas had adopted the opposite view. Insurance Co. v. Thomas, 27 C. C. A. 42, 82 Fed. 406, 47 L. R. A. 450; Kyte v. Assurance Co., 144 Mass. 43, 46, 10 N. E. 518; Dewees v. Insurance Co., 35 N. J. Law, 366; Assurance Co. v. Norwood, 57 Kan. 610, 611, 613, 47 Pac. 529, 530, 532. The supreme court cited and quoted with approval and at great length the opinions of the courts of Massachusetts and New Jersey upon this subject. After approving these decisions, it remarked: "It must be conceded that it is shown in the able brief of the defendant in error that in several of the states the courts appear to have departed from well-settled doctrines in respect both to the incompetence of parol evidence to alter written contracts, and to the binding effect of stipulations in policies restricting the authority of the company's agents," and proceeded to review its own decisions. It quoted from and reaffirmed its opinions in Carpenter v. Insurance Co., 16 Pet. 495, 10 L. Ed. 1044, Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, and Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934. One of its quotations is not without special significance in view of another phase of this case. After the death of Tevis on August 10, 1899, his brother paid to the clerk of the local camp, and the latter, in ignorance of the death of Tevis, accepted, all his arrearages, and sent them forward to the head camp, which received them without notice of the fact that they had been paid after they were due, and after the death. In Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, the authority of an agent to waive a forfeiture of a policy of life insurance because the insured lived in a prohibited district by the acceptance of premiums with knowledge of that fact was in question. In the Northern Assurance Company Case the supreme court quotes this excerpt from the opinion in that case with evident approval:

"Not only should the company have been informed of the forfeiture before it could be, held by its action to have waived it, but it should also have been informed of the condition of the health of the insured at the time the premium was tendered, upon the payment of which the waiver is claimed. The doctrine of waiver, as asserted against insurance companies, to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked when the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured, if they were afterwards allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the company sought to be estopped from denying the waiver claimed should be apprised of all the facts,—of those which create the forfeiture, and of those which will necessarily influence its judgment in consenting to waive it."

After quoting more at length from this opinion, and after an exhaustive review of its decisions relative to the authority of insurance agents, the supreme court reversed the judgment of this court in the Case of the Northern Assurance Company, and declared as the sum of the whole matter that these principles were sustained by the authorities, and were controlling in the construction and enforcement of contracts of insurance:

"That contracts in writing, if in unambiguous terms, must be permitted to speak for themselves, and cannot, by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts; that this principle is applicable to cases of insurance contracts as fully as to contracts on other subjects; that provisions contained in fire insurance policies that such a policy shall be void and of no effect if other insurance is placed on the property in other companies without the knowledge and consent of the company, are usual and reasonable; that it is reasonable and competent for the parties to agree that such knowledge and consent shall be manifested in writing, either by indorsement upon the policy or by other writing; that it is competent and reasonable for insurance companies to make it matter of condition in their policies that their agents shall not be deemed to have authority to alter or contradict the express terms of the policies as executed and delivered; that, where fire insurance policies contain provisions whereby agents may, by writing indorsed upon the policy, or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power in the matter, and, where such limitation is expressed in the policy executed and accepted, the insured is presumed, as matter of law, to be aware of such limitation; that insurance companies may waive forfeiture caused by nonobservance of such conditions; that, where waiver is relied on, the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that, where the waiver relied on is an act of the agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

It is impossible to read the opinion from which the foregoing quotations have been made without an abiding conviction that it contains an authoritative determination of the question now at issue in this case by the highest judicial tribunal in the land,—by the tribunal whose decisions are always controlling in this court. Tested by this decision, the clerk of the local camp to which the member Tevis belonged was the agent of the head camp or of the Modern Woodmen of America to collect, receive, and remit the benefit assessments to it. But he was its agent to collect, receive, and remit them at the

time and in the manner prescribed for their payment by the by-laws, and at no other times and under no other conditions. Those by-laws provided that delinquent members were ipso facto suspended; that their certificates were void; that they could be reinstated by the clerk by the receipt of arrearages only when they were in good health, and when they furnished warranties to that effect; and that no act or omission of the clerk of the local camp could have the effect of creating any liability of the society, or of waiving any right or immunity belonging to it. These limitations upon the power of this agent were known to the insured and the beneficiaries named in this certificate, because they were a part of their contract; and, in view of this decision of the supreme court to which we have adverted at such length, there is no escape from the conclusion that these limitations were binding upon all the parties to the agreement, and that the acts of the clerk of the local camp in extending the times of payment of the assessments upon its members and in reinstating delinquent members without warranties of good health were unauthorized by the society, and, in the absence of knowledge of and acquiescence in them by some of the chief officers of the head camp, were ineffective to establish any estoppel against the society, or any waiver by it of any of the provisions of the agreement.

A principal may limit the authority of his agent, and when he does so the agent cannot bind his principal beyond the limits of his authority by contract, estoppel, or waiver, to those who know the limitations of his power. Insurance companies and beneficial associations may limit the authority of their agents in this way by stipulations in their contracts, and, when so limited, such agents cannot by contract, waiver, or estoppel bind their companies to the insured or to the beneficiaries of the agreements beyond the scope of their authority prescribed therein, because the insured and the beneficiaries are conclusively presumed, in the absence of fraud or mistake, to know the terms of their contracts. The Modern Woodmen of America so limited the power of the clerk of the local camp by the terms of its benefit certificate in this case that he was without authority to extend the time of payment of benefit assessments, to waive defaults in their payment, or to reinstate a delinquent member who was not in good health, or who failed to furnish a warranty thereof. The beneficiaries and the insured knew these limitations upon the power of this agent, because they were a part of their contract with the society; and the acts of this local clerk beyond the scope of his prescribed authority, in the absence of notice or knowledge of and acquiescence in them by some of the principal officers of the society, constituted no waiver, estoppel, or contract of the association. They were not the acts of the society, and the insured and the beneficiaries were charged with knowledge of that fact. Northern Assur. Co. v. Grand View Bldg. Ass'n, 22 Sup. Ct. 123, 153, 183 U. S. 308, 46 L. Ed. 313; Graves v. Modern Woodmen of America (Minn.) 89 N. W. 6; Field v. National Council (Neb.) 89 N. W. 773–775; Elder v. Grand Lodge, 79 Minn. 468, 472, 82 N. W. 987; Knights of Honor v. Oeters, 95 Va. 610, 614, 29 S. E. 322; Borgraefe v. Knights of Honor, 22 Mo. App. 127, 142; Harvey v. Grand Lodge, 50 Mo. App. 472, 477, 478.

This conclusion is inconsistent with the result of the former hearing in this court, and with the charge of the circuit court, and necessitates a new trial of this case, unless the direction of the court below to the jury to find a verdict for the beneficiaries of the contract can be sustained upon some other ground. Counsel for the defendants in error argue that the judgment below may be sustained, because there was no competent proof that notice of the assessment was ever served upon the insured. Service of the notice was shown by the affidavit of the publisher of the official paper of the society that at the proper time he mailed a copy of the paper containing the notice to each of the persons named in the copy of the mailing list attached to his affidavit, addressed to each of them at the place specified on the mailing list as his address, and that the copy of the mailing list attached to his affidavit was a true copy of the list used in mailing this issue of the paper to the members of the society. The copy of the mailing list attached to the affidavit contains the correct address of the insured. Two objections are made to this proof of notice. It is said that it is insufficient, because the by-laws of the society provide that the affidavit of the publisher of the official paper attached to a copy thereof, together with a copy of the mailing list, shall be evidence of the service of the notice, and this affidavit contains the statement that the copy of the mailing list attached to it is "a true copy of the list used in mailing" the July issue of the paper, instead of a statement that it is a true copy of the mailing list. In view of the facts that the list attached to the affidavit contains the correct name and address of the member, and that the affidavit shows that the notice was duly mailed to him, directed to his proper address, the materiality of this distinction is not perceived.

The second objection to the proof of the service of the notice is that it was notice by mail, when it should have been an actual personal notice. In support of this contention counsel cite two cases, which hold that, where the by-laws of a beneficial association make no provision for notice by mail, personal notice is required. Courtney v. Association (Iowa) 53 N. W. 238; Association v. Loomis, 43 Ill. App. 599. But the by-laws of this society expressly provide that the mailing of the official paper containing the notice of any assessment shall constitute a sufficient service of such notice, and these by-laws were a part of the contract of the parties to this action. It is contended that the by-laws which authorize service of notices by mail are not a part of the contract, because there is no statement in the certificate that these particular by-laws constitute a portion of the agreement. But the application of the insured for membership is made a part of the certificate by the terms of the latter. That application contains this statement: "I further understand that the laws of this society now in force or hereafter enacted enter into and become a part of every contract of indemnity by and between the members and the society, and govern all rights thereunder." This statement is one of the terms of the proposition which Tevis made to the society when he applied to join it. The terms of his proposal were accepted, and upon them his certificate was issued. All the by-laws of the society became thereby a part of the contract, and the

service of notices of assessments by mail in accordance with the provisions of these by-laws was thereby made sufficient and effective.

Finally, defendants in error insist that the society is estopped from maintaining its defense, because it did not plead any tender or offer to return the moneys which it received in payment of the assessments upon Tevis. A complete answer to this objection, however, is that no such objection was made at the trial, and that no plea of the payment of any assessments, or of any estoppel on account thereof, appeared in the record until after the answer was filed. The complaint is based on a compliance with the terms of the contract. The defendant answered that complaint with a complete defense. The plaintiffs then changed their theory, and in their reply admitted the violation of the terms of the contract, and replied that the defendant was estopped to avail itself of that violation by its receipt of the assessments. In this state of the case it was not incumbent upon the defendant to plead a tender or offer to return them, but it was competent for it to meet the averments of new matter in the reply by proof that they were not true. Moreover, counsel for the plaintiffs admitted at the trial that the defendant offered to return to the beneficiaries the arrearages which it received subsequent to the death of Tevis; that they refused to accept them, and that they would not have accepted them at any time; and the defendant proved, without any objection to the sufficiency of the pleading, that the moneys received for these arrearages had been paid to the clerk of the court after the plaintiffs refused to accept them. After facts which should have been, but were not, stated in a pleading have been admitted without objection thereto, and a verdict has been rendered upon the admission, it is too late to object that they were not pleaded. There is no escape from the conclusion that the judgment in this case must be reversed, and a new trial of this action must be had. It is so ordered.

THAYER, Circuit Judge. I concur in the order reversing the judgment below, because the trial judge, after the case had been under advisement by the jury for some time, eventually instructed them, as a matter of law, that "the defendant company is absolutely estopped from setting up the defense that the policy in this case was forfeited on August 1, 1899," for failure to pay the assessments thereon within the time limited by the by-laws of the defendant company. In view of the by-laws, to which reference is made in the foregoing opinion, which declare, in substance, that benefit certificates shall become null and void if dues are not paid on or before the exact day of maturity, and that neither the local camp nor its clerk or any officer of the society shall have power to waive the provisions of any of the laws of the society, and especially in view of the recent decision in Northern Assur. Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 22 Sup. Ct. 123, 46 L. Ed. 313, wherein it is held that policy holders of insurance companies must, at their peril, take notice of limitations upon the powers of local soliciting agents, of which they are advised by provisions contained in their policies,—it follows, I think, that the learned trial judge should not have instructed the jury that the com-

pany was estopped, by the conduct of the local lodge, from asserting that the benefit certificate in question had become void for nonpayment of assessments on the day of maturity. While the local lodge acted in the capacity of agent for the head lodge in collecting assessments, yet the deceased certificate holder was advised by the by-laws of the society that such agent was without power to extend the time for paying assessments, and he can found no rights, as it seems, on the unauthorized conduct of the agent. The proof was plenary that Tevis did not pay a single assessment, after the issuance of the certificate, within the time limited by the letter of the by-law. Indeed, as was shown in our original opinion in this case (Modern Woodmen of America v. Tevis, 49 C. C. A. 256, 111 Fed. 113, 115, 116), a rule of the local lodge, which was in force when Tevis joined the order, expressly exempted all members of the local lodge from the obligation to pay their assessments on the day fixed by the company's by-laws, and practically gave them a month's time thereafter in which to make payments. In view of the doctrine enunciated in Northern Assur. Co. v. Grand View Bldg. Ass'n, supra, it is obvious that the learned trial judge erred in declaring as a matter of law that the company was estopped from asserting a forfeiture, although the deceased was doubtless misled, to his prejudice, by a long-continued practice of receiving assessments after they were due, which was well known to all the members of the local lodge. Whether this practice was of such long standing that it was probably known to the officers of the head lodge, or that it ought to have been known to them, as well as to the members of the local lodge, and whether the fact that the head lodge received, and still retains, and has never offered to return, the assessment which fell due May 1, 1899, and was paid after it was due, and after the certificate had become null and void, amounted to a ratification and an approval by the head lodge of the previous conduct of the clerk of the local lodge, are questions which cannot be properly discussed at this time. It would seem that there was as great necessity for returning the assessment that fell due on May 1, 1899, and was paid after maturity, as for returning the assessment that was paid subsequent to August 1, 1899, which the company did elect to return after this suit was brought, inasmuch as the policy became void, by the provisions of the by-laws, on May 1, 1899, and was ever afterwards of no effect, unless the retention of the latter assessment, with knowledge that it was paid after maturity, be regarded as a ratification of the act of the clerk of the local lodge in accepting that assessment. But these are questions which can be considered more appropriately on a second trial, and they may raise issues of fact which can only be determined by a jury. I accordingly concur in the reversal of the judgment.