## LOCOMOTIVE ENGINEERS' MUT. LIFE & ACCIDENT INS. ASS'N v. THOMAS.

(Circuit Court of Appeals, Eighth Circuit. May 20, 1913.)

### No. 3,767.

**1. APPEAL AND ERROR (§ 1057*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.**

Where a general custom of the secretary of a subdivision of defendant, a mutual insurance order, to leave receipts for assessments with the proprietor of a drug store for collection, for the convenience of the members, was conclusively proved, the exclusion of testimony offered on the trial of an action on a benefit certificate to show that such practice was not authorized by the association, was not prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194-4199, 4205; Dec. Dig. § 1057.*]

**2. INSURANCE (§ 760*)—MUTUAL LIFE INSURANCE—FORFEITURE FOR NONPAYMENT OF ASSESSMENTS—REINSTATEMENT.**

The by-laws of a mutual life insurance association provided that, on the failure of a member to pay an assessment when due, his membership and all rights of his beneficiary under his certificate should be forfeited, but that he might be reinstated at any time before the next assessment became delinquent "by paying the current assessment and the preceding assessment he is reported forfeited on and obtaining a dated and numbered receipt for the same." *Held*, that the requirement that he obtain a receipt was a reasonable and substantial one and that payment without obtaining a receipt did not effect a reinstatement.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1923; Dec. Dig. § 760.*]

Smith, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action at law by Eliza Thomas against Locomotive Engineers' Mutual Life & Accident Insurance Association. Judgment for plaintiff, and defendant brings error. Reversed.

William W. Hooper, of Leavenworth, Kan., and William G. Holt, of Kansas City, Kan., for plaintiff in error.

Benjamin F. Endres, of Leavenworth, Kan., for defendant in error.

Before HOOK and SMITH, Circuit Judges, and VAN VALKENBURGH, District Judge.

VAN VALKENBURGH, District Judge. The plaintiff in error is a mutual life and accident insurance association, incorporated under the laws of the state of Ohio. Its business is to provide life and accident insurance on the assessment plan for members of the Brotherhood of Locomotive Engineers, a voluntary labor organization. The de-

fendant in error is the mother of one John G. Thomas, who, as a member of subdivision No. 186 of the Grand International Division of the said Brotherhood at Denver, Colo., became the holder of two certificates of membership, or policies of insurance, in the defendant association. Subject to certain conditions hereinafter noted, these certificates called for the payment of $1,500 each, upon the death of the holder. John G. Thomas met his death by accident October 21, 1907, and plaintiff in error, as the beneficiary designated in the certificates, brings this suit to recover the insurance claimed to be due thereunder.

The by-laws of the association, among other things, provide:

"Sec. 26. Any member failing to pay an assessment when ordered as provided in the by-laws, or within the prescribed time, shall forfeit his membership and shall forfeit all right and title he or his beneficiaries may have to any benefits or claims in or against this association; and though not protected while in arrears, a member may be reinstated at any time before two assessments are past due by paying the current assessment and the preceding assessment he is reported forfeited on and obtaining a dated and numbered receipt for the same."

Thomas failed to pay the assessment falling due August 1, 1907. Another assessment was levied for September, 1907, and unless these two assessments were paid prior to October 10, 1907, all rights under the certificates were forfeited. The secretary of the subdivision was one John Hockenberger, himself a locomotive engineer. For the convenience of the members he had arranged with a jeweler in Denver, named Burnam, to collect the assessments as they fell due. Hockenberger made out proper receipts and left them with Burnam to be delivered as members called and payments were made. David Thomas, brother of the deceased certificate holder, testifies that on September 27, 1907, and consequently before any forfeiture could become final, he went to Burnam's place of business and paid all assessments then due from his brother, as well as from himself, including those for August and September above mentioned; that Burnam tendered him the receipts. He did not take them away, but says he asked Burnam to forward them to his brother John at Como, Colo. The defendant association denies that this payment was made, and asserts that the policies were forfeited and void prior to October 21st, the date on which John G. Thomas died. Burnam returned the receipts to Hockenberger, and Thomas was duly reported to the association as delinquent. It is unnecessary to consider in detail the evidence bearing upon the controverted issue of payment. The case was submitted to the jury, which returned a verdict in favor of the plaintiff. Counsel for plaintiff in error, in their brief, rely upon three assignments of error:

(1) That the court erred in excluding and not permitting the witness W. E. Futch to testify as to the authority given its (defendant's) agents, by the defendant company.

(2) That the court erred in instructing the jury to the effect that the only question for them to determine was whether the money had been paid to L. W. Burnam, defendant's agent, as testified to by plaintiff's witnesses.

(3) That the court erred in not instructing the jury that, before the plaintiff was entitled to recover, she must prove that her son, John G.

Thomas, paid his dues for the months of August and September and obtained receipts therefor as provided by the by-laws of said association or that by some act the defendant knowingly waived such condition.

These assignments will be considered in their order.

[1] That part of the record relied upon to disclose the first error complained of embraces a portion of the examination of W. E. Futch, president of the insurance association, called as a witness on behalf of the defendant:

"Q. I will get you to state whether or not the secretaries of your insurance have any authority to employ any agent or other person to do collecting for them.

"Mr. Endres (counsel for plaintiff): Objected to as incompetent, irrelevant, and immaterial, and for the further reason that Mr. Hooper in his opening statement to the jury admitted that Mr. Burnam—that the association had made arrangements with Mr. Burnam to collect this money as a matter of convenience for the railroad engineers; for the further reason that here is an open, notorious matter, and that it was known to these people, the method of doing business; it must be that way or they never could pay or receive the assessment unless it was done in that manner.

"The Court: Objection sustained."

The actual employment of Burnam to make these collections, that receipts were lodged with him for delivery, that this arrangement was generally understood among the members of the association, and that the payment of dues to him was an established custom, conclusively appears from the testimony. That all this took place with the knowledge and consent of the association and its chief officers is legitimately to be inferred. The objection quoted states that counsel for defendant, in his opening statement to the jury, admitted that the association had made this arrangement with Burnam for the convenience of the engineers. Counsel for defendant apparently acquiesced in the ruling of the court sustaining this objection, for no exception was taken. The exclusion of this testimony was not prejudicial, nor is the error assigned preserved for review.

[2] The second and third assignments involve the same matter of controversy, and will be considered together. The contention of plaintiff in error is that, in order to effect reinstatement and preserve the certificates in force, it was necessary, not only that the dues should be paid, but that dated and numbered receipts should be obtained, as provided by the by-laws. It is complained that the court submitted to the jury the single issue of whether payment was made in time to avert the forfeiture.

The certificates depend for their validity upon observance by their holders of all the substantial provisions of the by-laws affecting them. All members and certificate holders of this mutual association are presumed to have knowledge of the by-laws and regulations adopted for its government. This is not disputed. Is then the obtaining of a dated and numbered receipt, as a condition of reinstatement, a reasonable and substantial by-law provision? We think it is. It has a definite purpose—which is to minimize irregularities in the conduct of the agents and officers of the association, and to protect the society against imposition. Whether its value is great or small, it tends to

this end. Therefore the association has the right to establish, and to insist upon, this condition. It is particularly important in connection with collecting agents like Burnam, and it must be presumed that the arrangement in Denver was not unlike that in other places throughout the territory in which the association did business. Taking up the receipt would have presumably a wholesome, moral effect upon such agents, who are less likely to embezzle if they know that such receipts are outstanding, and that proof of irregularity may be forthcoming; not only so, but the same check would operate beneficially upon the regular secretaries of the association. They are more likely to keep faithful accounts, and make prompt and accurate reports and remittances, if formal receipts are delivered to the members when payments are made. Furthermore, a lax enforcement of this provision of the by-laws would tend to encourage corresponding laxness and neglect on the part of delinquents. The association, being organized not for profit, but for mutual benefit, depends entirely upon the collection of its dues for ability to meet its outstanding contracts. Upon the death of the holder of such a contract, an assessment to pay the same is made upon each assessable member, to be collected by the subdivision secretaries, and forwarded to the general secretary-treasurer. The certificates themselves provide that the benefits accruing under them cannot exceed the amount the association shall be able to pay from one assessment. It is therefore of the highest importance that all such assessments be promptly collected and faithfully remitted. That this provision was inserted with deliberation and design appears from a comparison of its language with that employed in section 27, providing for the payment of ordinary dues. There it is directed that:

"The secretary of each subdivision shall *give* each member a dated and numbered receipt for each assessment as it is paid."

When the member is delinquent, the duty is devolved upon him to *obtain* such a receipt, as one of the conditions of his reinstatement. The question here presented affects a course of dealing between the association, its officers, agents, and members, established for purposes of mutual protection. It does not involve the necessity of preserving and presenting such a receipt, once obtained, as a condition precedent to recovery on the policy. In such case the facts would be for the jury to determine. In this view, we are of opinion that this by-law provision is both reasonable and substantial. The membership of Thomas and the validity of his policies of insurance depended upon his making payment of assessments in the manner prescribed in the contract of membership, including the laws of the association which he was bound to know. Stringent as are the rules in ordinary life policies, they should be more rigidly applied in mutual associations. Maderia v. Merchants' Exchange Mut. Ben. Soc. (C. C.) 16 Fed. 749. Stipulations to insure the prompt payment of benefit assessments constitute the substance and the essence of insurance contracts of beneficial associations. Modern Woodmen of America v. Tevis et al., 117 Fed. 369, 54 C. C. A. 293. Aside from the substantial reasons which support and justify this by-law provision, it will be noted that, upon failure to pay, the membership and all right to benefits or claims

are ipso facto forfeited. There remains only the conditional right to reinstatement. For this, as for original admission to membership, the association has power to impose such stringent terms as it may deem necessary and proper. The certificate holder accepts them as part of his contract of insurance.

This being so, was the defense that Thomas failed to obtain the required receipt sufficiently pleaded? The answer states that the holder of these certificates long prior to his death ceased to be a member of the association "for the reason that he failed to comply with the constitution and by-laws of said association, and neglected and refused to pay the assessments provided for in its certificates and policies and in the constitution and by-laws of the order, and that by reason thereof he forfeited his membership in said association, and said certificates and policies, if any he had, became void and of no force or effect." We think this allegation is sufficiently broad to include all the conditions essential to the validity of the policies, now presented for consideration.

The portions of the charge complained of are the following:

"Now, gentlemen, in this case, the sole and only question you have to determine is whether by the greater weight of all the credible testimony in this case it has been shown to you that the assured either direct, or through the agency of his brother, did pay to the representative of this defendant the assessments which had been levied for the months of August and September, 1907, as the by-laws provide. If so, the certificates and the contract between these parties was in full force and effect at the date of his decease, and the plaintiff is entitled to recover; if not, the plaintiff is not entitled to recover. * * *

"If the brother of the deceased did pay this money on the 27th day of September, as contended here by the plaintiff, making payment in full up to that date, then the plaintiff in this case is entitled to recover. If he did not, the plaintiff is not entitled to recover.

"That is the question submitted to you for your determination. Because, if the local secretary intrusted this man Burnam with the possession of those receipts, and with the duty of collecting this money, the payment made to this man Burnam was good payment. So, in the end, the question for you to determine is: Did the brother of the deceased make the payment of dues owed by deceased to this man Burnam in Denver on the 27th day of September, 1907, in the manner he testified? * * *

"If this defendant received this money at the hands of this man Burnam, it has no defense it can make in this matter, but should pay."

It would thus appear that the court submitted the case exclusively upon the issue of whether the money was paid to Burnam, ignoring the necessity of obtaining the receipt required by by-law; and we find nothing elsewhere in the charge to modify or change the intendment of the parts quoted. It is probable that the court below was of opinion that when David Thomas, in one and the same transaction, placed these receipts in Burnam's hands for transmission by mail to his brother John Thomas, he had fully satisfied this by-law provision. We cannot assent to this view. Such a course is in direct conflict with the spirit of the provision, and would render it practically inoperative. It invites fraud and leads to endless confusion. There can be no doubt that a certificate holder can pay his assessments through an agent as effectively as in any other manner; but the obligation to obtain the

receipt is still present, and is not satisfied by leaving it—although with directions—in the very hands from which the by-law demands that it should be removed.

To this feature of the court's charge the defendant duly excepted. An inspection of the record convinces us that this defense was constantly in the mind of counsel, and was aptly brought to the attention of the court in the course of the trial. Being of opinion that the defendant was not accorded the benefit of this substantial matter of defense, we think the judgment should be reversed for a new trial in accordance with the views herein expressed, and it is so ordered.

SMITH, Circuit Judge (dissenting). I cannot concur in the foregoing opinion. The by-laws of the defendant as quoted in the opinion provided:

"Sec. 26. * * * A member may be reinstated at any time before two assessments are past due by paying the current assessment and the preceding assessment he is reported forfeited on and obtaining a dated and numbered receipt for the same."

It is manifest that before the insured can obtain a dated and numbered receipt the same must be issued by the defendant company, and if the insured paid all money due and the company refused to issue the dated and numbered receipts it would not be held that the company by its own wrong could finally forfeit the certificates.

If the insured paid the assessments and the company left the date or number off the receipts, it could not afterwards say the certificates were forfeited thereby.

It is a matter of grave doubt whether anybody understood this question was in issue on the trial of this case and is, therefore, a matter of serious doubt whether the case should be reversed at all, but the ground upon which the reversal is put makes it the duty of the court upon a new trial to direct a verdict for the defendant.

Conceding everything that can possibly be claimed for the defendant, if the brother of the deceased paid the two assessments, and the agent Burnam then handed him dated and numbered receipts which he accepted, the certificates were instantly revived without any reference whatever to what the brother did with the receipts. Everything mentioned in the by-law had then been literally complied with, and if the brother threw them in the waste basket or upon the floor or handed them back to Burnam with the request that he mail them to his brother, or whatever he did with them, that would have no tendency to revoke the reinstatement which took place prior thereto.