HOFFMAN *v.* SUPREME COUNCIL OF AMERICAN LEGION OF HONOR.

*(Circuit Court, E. D. Virginia, E. D.    May 4, 1888.)*

1. INSURANCE—MUTUAL BENEFIT SOCIETIES—APPLICATION—FALSITY OF REPRESENTATIONS—INSTRUCTION.

In an action by the beneficiary to recover the premium of a life insurance policy containing a clause to the effect that the policy was issued upon the condition that all the statements made by the applicant in his application for membership and in answer to the interrogatories of the medical examiner were strictly true, and, if untrue, the policy was to be void, an instruction, in substance that if the statements made by deceased concerning his health, as shown by the application and answers to such interrogatories, were "essentially untrue," they should find for defendant, is proper; the word "essentially" being synonymous with "strictly." in such case.[1]

2. SAME—DEFAULT—REINSTATEMENT—ESTOPPEL.

The defendant society having, through its duly appointed officers, after deceased had been suspended for delinquency in his assessments, continued to make calls upon him for subsequent dues, and to receive the amounts called for, and the local council having, upon full hearing of deceased's application for reinstatement, although not acting in all respects in conformity with the rules of the institution, granted such application, *held,* that it was estopped from denying that deceased was a member in good standing.

3. SAME—REINSTATEMENT—ESTOPPEL TO QUESTION APPLICATION.

The reinstatement having been opposed by the officers of defendant on the ground that the statements in the original application and answers to interrogatories were false and fraudulent, and the reinstatement having been granted, and dues received, with full knowledge of the untruthfulness of such statements, (if untrue,) the defendant society will be deemed to have waived the benefit of the condition of forfeiture in said policy.

4. SAME—ACTION ON POLICY—EVIDENCE—VERDICT—WEIGHT AND SUFFICIENCY.

Upon the issue of the falsity of the statements of deceased concerning his health, which were to the effect that he was in good health, able to gain a livelihood, had no disease, knew of no facts in his personal or family history tending to shorten his life, never had a severe illness nor injury, rheumatism, dropsy, palpitation of the heart, etc., it was shown by defendant that deceased had, during a period including the date of such application, written letters and made application to another society representing his bad health, asking and receiving benefits by reason of permanent disability; that he had abandoned his trade of blacksmith, and taken easier employment for that reason.   Certificates of physicians accompanied such application for relief, showing heart and other diseases.   Proof was made that during the same season deceased went to the springs for his health, with other strong testimony of the same character.   On the other hand was the testimony of his wife, the beneficiary in the policy, that he was in good health; the testimony of the physician who made the examination for the company officially; and the fact that he was recommended by a member of the society who had long known him and his physical condition, with some other testimony of a. corroborative character. *Held,* that a verdict for the plaintiff should not be set aside, there being evidence to support it, and it being the province of the jury to weigh conflicting evidence.[1]

At Law    On motion for new trial.

Action by Emma P. Hoffman, widow of John E. Hoffman, deceased, against the Supreme Council of the American Legion of Honor, upon a

---

[1] Respecting false representations as to health and habits in applications for life insurance, as avoiding the policy, see the note to Davey v. Insurance Co., 20 Fed. Rep. 482; Goucher v. Travelling Men's Ass'n, 20 Fed. Rep. 596, and note.   See, also, the note to Chrisman v. Insurance Co., (Or.) 18 Pac. Rep. 466.   For a reversal of the decision of the circuit court in Davey v. Insurance Co., 20 Fed. Rep. 482, see Insurance Co. v. Davey, 8 Sup. Ct. Rep. 331.

life insurance policy of which plaintiff was the beneficiary.  Verdict for plaintiff for $4,000.  Motion to set aside the verdict as contrary to law and evidence and for misdirection.

*J. Samuel Parish* and *Edgar Allan*, for plaintiff.

*J. Frank Fort* and *A. G. Collins*, for defendant.

HUGHES, J.   The plaintiff is the beneficiary of a policy of life insurance which was issued to the late John E. Hoffman, her husband, who died in February, 1886, supposing himself to be a beneficiary member of the defendant society.   This suit was brought to recover the premium promised by the policy.   There was a trial of the case at the fall term of this court, and a verdict in the plaintiff's favor for the sum of $4,000.  Motion was made to set the verdict aside as contrary to the law and the evidence, and on the further ground of error on the part of the court in ruling at the trial, and in instructions to the jury.

I am to consider whether the verdict should be set aside and a new trial granted on either of the grounds relied upon by the defendant.   I will first deal with the objections urged by defendant's counsel against the instructions given and rulings made at the trial by the court.   It is well settled that where the truth of statements inserted by a person seeking insurance in his formal application is made a condition of the existence of the contract of insurance, and the statements themselves are expressly made a part of the contract, then, if the statements are shown to have been false, that fact avoids the contract, whether the false statements be material to the risk or not.   For instance, if an applicant for life insurance asserts in his application that he is unmarried, and is not insured in any other company, and expressly makes these statements a part of the contract, then, if they turn out to be false, they render the contract void, although the being married and the being elsewhere insured does not affect the risk upon his life in any degree.   By such a contract he is held to warrant the truth of the statements thus made, and proof of their falsity renders the contract null and void.   See *Jeffries* v. *Insurance Co.*, 22 Wall. 47, and *Insurance Co.* v. *France*, 91 U. S. 510.   See, also, *Moulor* v. *Insurance Co.*, 111 U. S. 341–346, 4 Sup. Ct. Rep. 466, where the doctrine of the previously cited cases is, in certain aspects, modified.   In Hoffman's application for membership he agreed as follows, April 11, 1885:

"I do hereby consent and agree that any untrue or fraudulent statement made above, or to the medical examiner, or any concealment of facts by me in this application, or my suspension or expulsion from, or voluntarily severing my connection with, the order, shall forfeit the rights of myself and family or dependents to all benefits and privileges therein."

The policy which was issued in pursuance of this application (which seems to have been delivered as late as the 12th November, 1885,) contains the following clause:

"This certificate is issued to Companion John E. Hoffman, a member of Lafayette Council, No. 697, Am. L. of H., located at Richmond, Va., upon condition that the statements made by said companion in his application for membership in said council, and the statements certified by said companion to

the medical examiner, * * * be made a part of this contract. These conditions being complied with, the supreme council of the A. L. of H. hereby promises and binds itself to pay out of its benefit fund to Emma P. Hoffman, wife, a sum not exceeding five thousand dollars."

And Hoffman signed a certificate printed on the face of this policy, stating that he accepted it on the conditions named. Hoffman had been regularly examined by the society's medical examiner on the 11th April, 1885, who, after certifying that he had made in private a physical examination of the applicant, (whom, in his testimony, he stated that he had stripped to the skin for the purpose,) certified, among other things, that he had no dropsy, no swelling of face, abdomen, or extremities, and no indications of organic disease of the heart, or lungs, or spine, or bladder. On the next day, June 11, 1885, Hoffman answered a list of 75 or 80 interrogatories printed in his application for insurance, in which he stated that he was in good health, able to gain a livelihood, had no disease, and knew of no facts in his family or personal history tending to shorten his life; had never had a severe illness or injury, had never had dropsy, or rheumatism, or persistent pain in the back, or palpitation of the heart, or swelling of feet, hands, or eye-lids; nor been rejected for life insurance by any other company; and that he was then insured in a company named. The effort of defendant's counsel at the trial was to show that these statements of Hoffman were false. The court gave two instructions, the first one being as follows:

"*First Instruction.* The deceased stated in his application for membership that he then had no incurable disease which would tend to shorten his life; that he was then in good health, able to gain a livelihood; and that he did not then have, and had not been subject to, dropsy, or palpitation of the heart, or swelling in feet, hands, or eye-lids. These statements formed part of his contract; and if the jury believe that they were essentially untrue, they should find for the defendant."

It is complained of this instruction that the word "essentially" was used, and authorities are cited showing that the supreme court of the United States has held that instructions in similar cases which employed the word "materially" were erroneous, and has required new trials to be had in those cases because of such use of that word,—relying upon the *Jeffries Case,* and the *France Case,* cited above. But the two words are not synonymous. The word "materially" has a legal meaning and force; and it is very true that an instruction which should virtually tell a jury that a statement in the application of an insured person, who has expressly made it part of his contract, must be material to the risk, would be clearly erroneous, and would vitiate any verdict resulting from such instruction. But the word "essentially" has no such legal force. It has only the meaning given it in popular parlance. It is but a synonym of "strictly;" and the printed case furnished by defendant's counsel shows that the word "strictly," if it had been used in the instruction, would have been in harmony with the contract. By some misconception the paragraph given at the bottom of page 72 and top of page 73, of the printed case, as if it were a part of Hoffman's contract, is not found in

the contract itself, though an equivalent one is. Now, if Hoffman had in fact stipulated, as he is assumed to do in that clause, that he would claim no benefits unless "the statements made in his application were 'strictly' true," the instruction complained of would have been in literal accordance with the contract. The word "essentially" was properly used in the instruction, because synonymous with the word "strictly," and not synonymous with the legal term "materially." There was evidence that during the winter preceding Hoffman's application for membership in defendant's society he had been prostrate in bed for some time with sickness, and that after his recovery he had been unable to work at his regular trade of blacksmith, and that he had in consequence changed his occupation, and undertaken that of soliciting agent for a mercantile firm. The defendant had contended that the statement of Hoffman in his application, that he was in April well and able to gain a livelihood, was shown to be false by their proof that he was unable to do regular work at the blacksmith's trade. The instruction under consideration had reference to such illogical deductions of the defense as that of insisting that a blacksmith was unable to gain a livelihood because he was disabled from working at his regular trade. It had reference solely to the character of proof, and had no reference to the legal materiality of the facts that were proved. It therefore did not conflict with the ruling of the supreme court in the cases of *Jeffries* and *France* on the question of warranty in life insurance policies.

As to the second instruction given at the trial, I will premise that the evidence showed one or more defaults on the part of Hoffman in paying assessments in time; the penalty of which was suspension from membership. It showed that the usual application for reinstatement, accompanied by tender of the delinquent dues, had been made to the local council to which Hoffman belonged, the Lafayette Council of Richmond, and that when this local council came to act upon the question of reinstatement, charges had been laid before the council affecting the original right of Hoffman, by reason of disease, to have been admitted to membership. The local council had passed favorably upon the question of Hoffman's reinstatement, in spite of the charges of improper admission originally; but the defense insisted that this action, and the proceedings which were had in reaching it, had not been in accordance with certain rules of the society enacted for the government of local councils in considering applications for reinstatement. It was in reference to this contention of the defendant that the court gave to the jury the following instruction at the close of the evidence, viz.:

"*Second Instruction.* But if the defendant society, through its duly appointed officers, after this member's delinquency in paying one or more assessments, continued to make calls upon him for assessments for subsequent dues, and to receive the amounts called for, it is estopped from denying that the member was still liable to assessment."

The court had ruled, in the course of the taking of evidence before the jury, that after it had been proved that the local council, upon a full hearing, had solemnly decided to reinstate Hoffman, and new assessments

had been called for, the society could not now be heard to insist that the lodge in Richmond had not acted in accordance with the rules and regulations of the society; or to discredit the action of its own organization in matters of which it had constitutional jurisdiction. It ruled that, when organized bodies pass upon a question of this sort, courts will presume that they had proceeded regularly, and acted rightly. It ruled that when a competent lodge had acted upon a question which the constitution of the society empowered it to adjudicate finally, it would not be competent for the defendant to adduce evidence to show that the action of such local lodge had not been in strict accordance with the rules and regulations prescribed by the supreme organization. The evidence seemed to show that Hoffman's past-due assessments were paid and were received after his reinstatement by the local council; that the assessment of subsequently accruing dues had been made; that there had been no material laches in paying these later dues; that the local treasurer had received several assessments after Hoffman's reinstatement, and forwarded them to the chief society in New Jersey; that Hoffman afterwards took sick of what proved to be his last illness, of which he died on the 5th February, 1886; that the New Jersey officers refused to receive, during this illness, dues which had been forwarded to them from Richmond by their local treasurer, and had sent them back; and that their agents had attempted to return them on the day of Hoffman's death, his friends refusing to receive them. On evidence seeming to show the state of facts which have been recited, the court made the oral ruling at the trial, and gave the written "second instruction" to the jury at its close, which have been respectively set out.

The theory of the objections to these instructions is, that the local council of the society is bound, at the peril of a member who has been suspended, to conduct its proceedings for his readmission strictly according to the manner prescribed in the constitution of the society; that if it fail strictly to observe the routine thus prescribed, the suspended member is responsible for the irregularity; and that, if the local council varies at all, in its proceedings for readmission, from the tenor and details of procedure recited in the constitution, then the reinstatement shall be null and void. The ruling of the court was in controversion of this illiberal and hard pretension. The court virtually instructed the jury that the local council was the representative and agent, not of the insured, but of the society; that although it was bound to conform all its proceedings to the requirements of the society's constitution, yet the applicant for reinstatement was not responsible for such irregularities of proceeding as the local council might commit; and that when that body, constitutionally authorized as it was to receive and pass upon applications for admission, did enter into the consideration of a case, did adjudicate it, did readmit an applicant, and afterwards supplemented this action by renewing its calls upon the readmitted member for assessments, and the new assessments were taking their usual course without default on his part, then these acts of the society constituted an estoppel, prohibiting the society from denying the legality of the member's readmission

and subjection to new assessments. The cases of *Insurance Co.* v. *Wolff*, 95 U. S. 326, and *Insurance Co.* v. *McCain*, 96 U. S. 84, so far from countenancing the contention of defendant, really sustain the ruling of the court. Counsel for the defendant urges that from the tenor of the second instruction, and especially the use of the word "but," at the beginning of it, the jury might have been led to believe the court meant that in case assessments were called for after Hoffman's delinquency, the plaintiff could recover, notwithstanding untrue statements in his application; the defendant being estopped from setting up the untrue statements in bar of recovery. The instruction necessarily bore upon the evidence as it had been given before the jury. The action of the local council on Hoffman's application for reinstatement was an adjudication directly upon his default in the payment of assessments, and it must have indirectly contemplated the charge of fraud or misrepresentation in his application for original admission. The instruction did not logically apply to the latter case, and if the jury understood it to imply (what it did not express) that the society was estopped from denying the legality of Hoffman's original admission to membership, I do not think that the possibility of such a misconception constitutes a valid objection to the instruction. Be that as it may the renewal of assessments after reinstatement is analogous to the renewal of ordinary life policies at the end of each period of insurance; and it is well settled that if a company see fit to renew a policy after it has full knowledge of the risk, any misrepresentation contained in the original application must be deemed waived; and the company are bound by the policy. It is settled law that, where an insurance company, with knowledge of the facts, accepts from the assured a premium for a renewal, and renews the insurance, it is deemed to have declared the contract of insurance valid, and to have waived a forfeiture. 2 Herm. Estop. § 1214, and cases cited. By analogy, these authorities govern the case at bar, and overrule defendant's objection to the instructions and ruling of the court.

We come, therefore, to consider, finally, the objection that the verdict of the jury was contrary to law and the evidence. Defendant's counsel contends that it was contrary to law because, although it is a settled principle that when an assured makes the truth of the statements in his application the foundation of the insurance, the policy is void if they be untrue, whether they are material to the risk or not; and although Hoffman's application did contain such warranties, yet the jury found for the plaintiff, after it was known that certain statements in his application were false. Our inquiry, therefore, is whether the falsity of Hoffman's answers was absolutely proved, or whether the evidence left room for doubt on the subject in the minds of the jury. If the falsity were a matter of doubt, then it devolved upon the jury, and the jury alone, to solve the doubt; whereas, if the falsity was beyond doubt, then it devolves upon the court to set aside the verdict as contrary to the evidence, and to the law governing the case. It is not contended that most of the 70 or 80 answers made by Hoffman to the interrogatories propounded in his application for insurance were other than true. The defendant rests

its case upon the alleged falsity of the answers heretofore mentioned 'in which he declared that he was in good healtu; able to gain a livelihood; had no disease, and knew of no facts in his personal and family history tending to shorten his life; had never had a severe illness or injury; had never had dropsy, or rheumatism, or persistent pain in the back, or palpitation of the heart, or swelling of feet, hands, or eye-lids; nor been rejected for life insurance; and that he was insured in a company called the "Golden Chain." I am unwilling arbitrarily to assume that it was proved beyond reasonable doubt that these statements were false. There was much evidence tending very strongly to establish their falsity, consisting of Hoffman's own letters and declarations during a period including the date of his application for membership in the defendant society, addressed to another society of which he was a member, in support of an application he made to that order for pecuniary benefits claimed to be due him because of permanent disability to pursue his regular calling. One physician had certified, in connection with this application, that he had mitral disease of the heart; another, saying that he had been Hoffman's regular family physician, certified that he had spinal enimia. These two had united with two others in a joint certificate, signed on the 6th April, 1885, in which, dropping the "spinal enimia," they certified to "mitral disease of the heart," dropsy of the legs, and dyspepsia, and added that he was unable to follow his usual occupation. Evidence was also adduced that showed that Hoffman had been ill during the winter, and that it was this illness which disabled him from following his usual avocation. It was also shown that Hoffman had gone, during the summer of 1885, to some of the springs in the mountains, for the benefit of his health. The evidence on these heads was very strong; not only to the effect that when he signed his application, on the 11th April, 1885, for membership in the defendant society, Hoffman was not a well man, but that he knew he was not, and had made the false statements knowing they were false. *Per contra*, the defendant society's examining physician, after a thorough examination of this man, had certified on the 10th April, 1885, that he was not subject to the diseases to which, four days before, four other physicians on a less thorough examination had certified to another society that he was subject. Hoffman's answers to the interrogatories of the defendant society were made on the day following his examination by that society's physician, and it was probably on the faith of what this physician had thus certified that Hoffman's answers and statements were made. Hoffman was recommended for beneficial membership by two members of the defendant society, one of whom had been an intimate friend and acquaintance for years, and well acquainted with his physical condition. The testimony of Mrs. Hoffman was positive as to his physical health until his last illness.

I have not undertaken to mention or to indicate all the evidence on either side of the question that was before the jury. I am sure, however, that the evidence in behalf of the defendant was not conclusive to the mind of the average juror. I think if I myself had been trying the case on the facts as well as the law, my decision would have been for the

defendant. But it has been long settled that such a conviction on the part of a judge does not justify him in setting aside a verdict as contrary to the evidence where the trial was fair and deliberate, and no after-discovered evidence is set up. It was the prerogative of the jury to pass upon the evidence; and if they resolved the doubts that might have arisen in their minds from its contradictory character in favor of the plaintiff, it is not for the judge, because his conclusion is different, to nullify their verdict.

As to the law of the case, I have felt bound by the reasoning of the supreme court of the United States in *Moulor* v. *Insurance Co.*, 111 U S. 341, 342, 344–346, 4 Sup. Ct. Rep. 466. The contract in that case was much more specific and stringent against the insured than the contract here. It was so strong that the judge below had taken the case wholly from the jury, and instructed them to find for the defendant. The supreme court ruled there substantially as I feel bound by that precedent to rule here; to the effect that, however strong the case may seem in the judge's opinion to be against the plaintiff on the evidence, yet, if there be doubt as to the weight of evidence, the jury must resolve it.

The motion to set aside must be denied.