## SUPREME LODGE KNIGHTS OF HONOR ET AL.
### *v.* JONES ET AL.

[No. 4,508. Filed January 27, 1904. Rehearing denied March 31, 1904. Transfer denied March 16, 1905.]

1. TRIAL.—*Question of Law or Fact.—Duty of Court.*—Where the material facts of a case are not in dispute, it is the duty of the court to apply the law. p. 123.

2. INSURANCE.— *Mutual Benefit.— Local Treasurer.— Agency.*— The local officer who collects the dues from the members of a local lodge and transmits such dues to the grand lodge is the agent of such grand lodge. p. 125.

3. SAME.—*Mutual Benefit.—Payment of Assessment After Default.— Estoppel.—Agency.*—The fact that the collector of dues of a local lodge has collected and remitted assessments after the day of default does not necessarily estop the grand lodge from declaring a forfeiture for subsequent defaults, since an agent can not bind his principal by his unauthorized acts. p. 126.

4. SAME.—*Mutual Benefit.—Nature of.*—Mutual benefit or fraternal insurance ordinarily lasts only from the maturity of one assessment to the maturity of another, and stipulations to insure prompt payment are of the substance and essence of such contracts. p. 129.

5. SAME.—*Mutual Benefit.—Duties and Obligations.*—The obligations of the beneficial association and of its individual members are reciprocal, and both must comply with the constitution and laws of such association. p. 130.

6. SAME. — *Mutual Benefit. — By-Laws. — Assessments. — Failure to Pay.*—Where the by-laws of a beneficial association provide that "a member failing to pay any assessment required by law, shall stand

suspended, and shall not thereafter be entitled to the benefit of the widow and orphans' benefit fund" unless reinstated, a member failing to pay an assessment due and payable March 1, is not in "good standing" on March 10.    p. 130.

7. AGENCY.—*Death of Principal.*—*Revocation.*—The death of the principal revokes the authority of his agent.    p. 131.

8. INSURANCE. — *Mutual Benefit.* — *Assessments.* — *Payment After Death.*—Payment of an assessment after the death of assured by the beneficiary will not revive a forfeited contract of beneficial insurance.    p. 131.

9. NEW TRIAL.—*Insurance.*—*Mutual Benefit.*—*Evidence.*—*Sufficiency.* —Where the evidence shows that a member of a fraternal beneficiary society failed to pay an assessment at the time fixed by the by-laws and that after such member's death such assessment was paid to the society's local treasurer, who returned same upon learning of such member's death, a verdict and judgment for such member's beneficiaries can not be sustained.    p. 131.

From Knox Circuit Court; *Orlando H. Cobb,* Judge.

Action by Joseph F. Jones and others against the Supreme Lodge Knights of Honor and another. From a judgment for plaintiffs, defendants appeal. *Reversed.*

*Emison & Moffett, Frederick H. Bacon* and *L. B. Ewbank,* for appellants.

*Cullop & Shaw,* for appellees.

WILEY, P. J.—December 20, 1888, appellant lodge issued to Joseph L. Jones a certificate of membership in its company, by which it agreed to pay to his wife, who was named therein as beneficiary, the sum of $1,000 at his death. He was at that time a member of one of said appellant's subordinate lodges at Mt. Carmel, Illinois. He held his membership in that lodge until it became defunct, and thereupon his membership was transferred to a subordinate lodge at Vincennes, Indiana. Later he moved to Knobel, Arkansas, where he lived until the time of his death, which occurred March 10, 1901. Upon his death, appellant lodge refused to pay the amount provided for in the certificate, or any amount to appellees, who are his brothers and sisters, and his only heirs, on the ground that he had forfeited his

membership and all benefits by his failure to pay the asess- ments made against him for the month of February.

Thereupon the appellees brought and prosecuted this ac- tion to a successful termination in the court below. While the record shows the overruling of a demurrer to each para- graph of the complaint and one paragraph of reply, and such rulings are assigned as errors, they are waived by a failure to discuss them. In oral argument, the counsel for the supreme lodge stated that they relied solely for a re- versal upon the overruling of the motion for a new trial. While several questions are presented under the motion for a new trial, the single question discussed and relied upon is the sufficiency of the evidence to support the verdict and judgment.

If the assured was in good standing at the time of his death, and had not forfeited his rights by the nonpayment of the assessment made against him for death benefits for February, 1901, then it is conceded by appellant lodge that the correct conclusion was reached in the trial court. The position of the Supreme Lodge Knights of Honor is, how- ever, that he was not in good standing; that he forfeited his rights under the certificate, and hence appellees are not entitled to recover.

1. Upon the pivotal facts, which must control, there is no conflict. It is the province of the court in such case to apply the law.

Succinctly stated, the facts of controlling influence are as follows: From the issuance of the certificate sued on, up to and including the last day of January, 1901, the assured, or some one for him, had paid all monthly assessments made against him. By reason of such payments, and also the pay- ment of quarterly dues, etc., he was in good standing in the order up to the last day of February, 1901. Under the laws of the appellant lodge, each member was liable to an assess- ment each month for death benefits, and such assessments, when so made, and proper notice thereof given, were payable

on or before the last day of each month. As no question is made of the sufficiency of the notice, it is unnecessary to consider it further. Section 8 of article 9 of the constitution provides: "A member failing to pay any assessment required by law, shall stand suspended, and shall not thereafter be entitled to the benefit of the widow and orphans' benefit fund, until he has been duly reinstated in his subordinate lodge in accordance with the laws of the order." The laws make ample provision for the reinstatement of suspended members, but appellees do not rely upon any rights by reason of the reinstatement of the assured, under whom they claim as heirs, and hence no further reference to the laws in that regard is needed.

The wife of the assured, who was named in the certificate as his beneficiary, died before he did. He did not leave any children. After her death he applied to the order to have the certificate changed so as to make one Joseph Sellmeyer his beneficiary. Sellmeyer at that time was his creditor. He was informed that under the laws of the order this could not be done, for the reason that Sellmeyer was not related to nor dependent upon him. Thereupon the certificate was returned to him. For several months prior to his death, the insured did not pay the monthly assessments against him, but they were paid by his brothers and sisters, and two payments were made by Sellmeyer. The latter lived at Knobel, Arkansas. Some of these payments were not made on the day they were due, but within one, two or three days thereafter. The officer of the local lodge, whose duty it was to receive and receipt for such assessments, received the payments that were made after they were due, entered them upon his books as of the date they were due, and remitted them to the supreme lodge. The assessment due the last day of January, 1901, was paid by Joseph Sellmeyer, and on the day it was due. A receipt for this payment was given by the proper officer, sent to Sellmeyer, and the latter was fully instructed as to what future assessments would be,

and when they should be paid, and if not so paid the insured would stand suspended. The assessment made for February, 1901, was not paid when due. March 15, 1901, Sellmeyer wrote a letter to the local lodge, asking if the dues on the certificate of Jones had been paid. The financial reporter of the lodge replied that the last assessment had not been paid, but that he could be reinstated if it were paid by the 31st of March. March 18, 1901, Sellmeyer sent a draft for the amount of the February assessment, to the proper officer of the Vincennes lodge, who received the same, and sent a receipt therefor. He did not have the draft cashed, but put it in his safe. He received this draft March 19 or 20, and on the 21st sent to the address of Jones an application for reinstatement. March 25, a sister of the insured, who lived at Mt. Carmel, called on the financial reporter of the local lodge at Vincennes, and told him that her brother was dead. March 26, the reporter wrote Sellmeyer, stating that he had been informed that Jones was dead, and asked for definite information about it. In response to that letter, Sellmeyer replied by letter saying that Jones died March 10. March 29, 1901, the financial reporter wrote Sellmeyer as follows: "Herewith enclosed I return your draft No. 3,658 sent me for Mr. Jones's assessment. Mr. Jones was under suspension at the time of his death, and having made no application for reinstatement, and not having been reinstated by his lodge, prior to his death, he is not entitled to benefits." The first intimation that the financial reporter of the lodge had that Jones was dead was on March 25. As soon as that information was confirmed, the draft sent for the February assessment was returned to the sender.

2. The decision of the case must depend upon a correct answer to this inquiry: Do the facts constitute a waiver and estop appellant from declaring a forfeiture? It is urged by counsel for appellees that the acceptance of monthly assessments from the assured, and others, for and

on his behalf, after they became due, is sufficient to estop appellant lodge from declaring a forfeiture for nonpayment *ad diem* of the assesment that became due the last day of February, 1901.   This position is assumed on the theory that the financial reporter of the local lodge, in receiving and remitting assessments to the supreme lodge, is the agent of the latter, and hence it is bound by his acts.   Notwithstanding the fact that it is declared by the laws of the order that the officer charged with receiving from the members and remitting assessments to the supreme lodge shall be the agent for the local lodge, yet it is firmly settled by the authorities that in that respect he will be regarded as the agent of the grand lodge.   *Supreme Tent, etc.,* v. *Volkert* (1900), 25 Ind. App. 627; *Supreme Tribe, etc.,* v. *Hall* (1900), 24 Ind. App. 316; *Supreme Court, etc.,* v. *Sullivan* (1901), 26 Ind. App. 60; *Modern Woodmen, etc.,* v. *Tevis* (1902), 117 Fed. 369, 54 C. C. A. 293.

3.   In the case now before us, it appears from the evidence that the financial reporter of the local lodge of which the deceased was a member had accepted and remitted pastdue assessments made against him.   It does not necessarily follow, however, that in so doing he bound appellant lodge by his acts, and estopped it from declaring a forfeiture for a subsequent nonpayment within the time prescribed by law.   An agent can not go beyond his authority, and by his unauthorized acts bind his principal.

Counsel for appellees cite many authorities to support their contentions.   The leading case relied upon is that of *Modern Woodmen, etc.,* v. *Tevis* (1901), 111 Fed. 113, 49 C. C. A. 256, in which the very question here involved was decided in harmony therewith.   Unfortunately for them, however, a rehearing was granted, and in a subsequent opinion *(Modern Woodmen, etc.,* v. *Tevis* [1902], 117 Fed. 369, 54 C. C. A. 293) the Circuit Court of Appeals, by Mr. Justice Sanborn, in a very able and exhaustive opinion, reached a different conclusion.   The identical question be-

fore us was there decided adversely to the contention of appellees. The Circuit Court of Appeals in that case followed the rule declared in the case of *Northern Assur. Co.* v. *Grand View Bldg. Assn.* (1902), 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213. Prior to the decision last mentioned, there was much conflict in the decisions of federal courts on the question; and, in referring to it, Justice Sanborn, in *Modern Woodmen, etc.,* v. *Tevis* (1902), 117 Fed. 369, 54 C. C. A. 293, said: "The question became so important, and the opinions upon it so numerous and divergent, that the Supreme Court removed the case last cited [*Northern Assur. Co.* v. *Grand View Bldg. Assn., supra*] by writ of *certiorari,* and in an elaborate and exhaustive opinion, * * * rendered a decision which was evidently intended to close the discussion in the federal courts, and finally to put this question at rest."

The issue of law in that case was whether an insurance company could be deemed to have waived a condition in a policy of fire insurance, rendering it void in case other insurance had been or should be made upon the property, unless by agreement indorsed thereon or attached thereto, because its agent had notice or knowledge of the existence of other insurance in another company at the time he delivered the policy and received the premium, and the policy itself provided that no officer or agent should have power to waive any provision or condition, except by indorsement on the policy, etc. It was held that such knowledge of the agent was not a waiver on the part of the company, and would not bind it. The facts upon which the case of *Modern Woodmen, etc.,* v. *Tevis, supra,* was decided were these: Appellant on March 31, 1899, issued to W. H. Tevis a certificate by which it promised to pay to the beneficiaries therein named a designated sum of money upon the death of the insured, according to the terms of the certificate, and in conformity with the laws of the order.

The condition of payment was that the insured be in good

standing at the time of his death. By the terms of the certificate, and in conformity to the laws of the order, he could only be regarded in good standing by performing all the conditions imposed upon him by the contract of insurance. One of these conditions imposed upon him was the obligation of paying all assessments for death benefit on or before the first day of each month. Upon failure so to pay, by the express terms of the law, he became suspended *ipso facto*. While so suspended he was not a beneficiary member. Provision was made whereby suspended members might be reinstated. It was a custom of long standing for the officer of the subordinate camp to which he belonged, whose duty it was to collect and remit to the head camp such assessments, to receive the same from the members after they became due. In some instances twenty days elapsed before such payments were made by some of the members.

A proper assessment was made against the insured for July, 1899, which was due and payable not later than August 1. That assessment was not paid when due. He died August 10, 1899, being ten days after the assessment became due. His assessment that became due June 1, 1899, he paid on June 2d, in accordance with the custom that prevailed. After the death of the insured, but on the day thereof, his brother paid all of his arrearages to the proper officer of the local camp, who, in ignorance of the fact, accepted them and sent them forward to the head camp, which received them without notice of the fact that they had been paid after they were due, and after his death.

After making copious quotations from the opinion in *Northern Assur. Co.* v. *Grand View Bldg. Assn, supra,* Justice Sanborn, in *Modern Woodmen, etc.,* v. *Tevis* (1902), 117 Fed. 369, 54 C. C. A. 293, said: "It is impossible to read the opinion from which the foregoing quotations have been made, without an abiding conviction that it contains an authoritative determination of the question at issue in this case by the highest tribunal of the land. * * *

Tested by this decision, the clerk of the local camp to which the member Tevis belonged was the agent of the head camp or of the Modern Woodmen of America to collect, receive, and remit the benefit assessment to it. But he was its agent to collect, receive, and remit them at the time and in the manner prescribed for their payment by the by-laws, and at no other times and under no other conditions. Those by-laws provided that delinquent members were *ipso facto* suspended; that their certificates were void; that they could be reinstated by the clerk by the receipt of arrearages only when they were in good health, and when they furnished warranties to that effect; and that no act or omission of the clerk of the local camp could have the effect of creating any liability of the society or of waiving any right or immunity belonging to it. These limitations upon the power of this agent were known to the insured and the beneficiaries named in this certificate, because they were a part of their contract; and, in view of this decision of the Supreme Court, \* \* \* there is no escape from the conclusion that these limitations were binding upon all the parties to the agreement, and that the acts of the clerk of the local camp in extending the times of payment of the assessments upon its members \* \* \* were unauthorized by the society, and, in the absence of knowledge of and acquiesence in them by some of the chief officers of the head camp, were ineffective to establish any estoppel against the society, or any waiver by it of any provisions of the agreement." *Insurance Co.* v. *Wolff* (1877), 95 U. S. 326, 24 L. Ed. 387, is also in point.

4. The law as declared in these cases is based upon correct principles and is decisive of the controversy here. A contrary rule—the one for which appellees contend—would undermine all fraternal and beneficial societies of this character, and be subversive of their dominant and leading objects and purposes.

As suggested in the case from which we last quoted, fra-

ternal insurance is temporary insurance—insurance from the maturity of one assessment to the maturity of another—and stipulations to insure promptitude in the payment of the assessments constitute both the substance and essence of contracts for it. *Klein* v. *Insurance Co.* (1881), 104 U. S. 88, 26 L. Ed. 662; *Thompson* v. *Insurance Co.* (1881), 104 U. S. 252, 26 L. Ed. 765; *New York Ins. Co.* v. *Statham* (1876), 93 U. S. 24, 23 L. Ed. 789; *McMahon* v. *Supreme Tent, etc.* (1899), 151 Mo. 522, 52 S. W. 384; *Harvey* v. *Grand Lodge, etc.* (1892), 50 Mo. App. 472; *Carlson* v. *Supreme Council, etc.* (1896), 115 Cal. 466, 47 Pac. 375, 35 L. R. A. 643.

5. In fraternal insurance companies, assessments of the character under consideration are made but for one purpose, and that is to pay death losses of members who have died while in good standing. This is made plain by the constitution and general laws of the appellant lodge, and it is not out of place to remark that the laws of associations of this character are in this particular substantially the same. The assessment and the payment thereof is the only source of the beneficiary fund, and, without the payment of such assessments, there could be no beneficiary fund. This being true, the association and the individual members have reciprocal obligations, the one depending upon the other. These obligations are that, to the end that each may derive the contemplated benefits, they must both comply with the constitution and laws of the order. *Grand Lodge, etc.,* v. *Marshall* (1903), 31 Ind. App. 534.

6. Under the laws of appellant lodge, and by the terms of the contract of insurance, the insured was not in "good standing" when he died. That condition was not occasioned by any fault of the lodge, but was the direct fruit of his own laches. He and his beneficiaries were bound to know his and their rights, for they were fixed by the laws of the association, and such laws were a part of the contract of insurance. Any infraction of those laws was a violation of

the contract, and a failure to pay an assessment when due was such an infraction, and worked a suspension of the insured. He died before he was reinstated, and while in default.

7. If it could be said that Sellmeyer was his agent to pay his assessments, such agency was revoked by his death. *Goelz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67.

8. Payment by him after death could not vitalize the forfeited contract, or work a reinstatement of the insured. This is emphasized by the facts that when such payment was received by the financial reporter he was ignorant of the death, and returned the payment upon learning thereof.

9. These considerations lead to the conclusion that the evidence is not sufficient to support the verdict and judgment.

Judgment reversed for further proceedings consistent with this opinion.