[No. 8537. Department One. March 29, 1910.]

MALVINA HOELAND, *Executrix of the Estate of Adolph Hoeland, Deceased, Respondent*, v. WESTERN UNION LIFE INSURANCE COMPANY OF SPOKANE, WASHINGTON, *Appellant*.[1]

INSURANCE—LIFE INSURANCE—WARRANTIES. Representations in an application for life insurance relating to the applicant's health are warranties, and not expressions of opinion, where it is expressly stipulated in the application that they are warranted to be true; and a breach thereof avoids the policy, whether known to be false or not.

SAME—CONSTRUCTION OF APPLICATION. An application for insurance answering questions as to enumerated diseases, among them the question "Headaches—severe, protracted, or frequent," must be

[1]Reported in 107 Pac. 866.

construed to mean headaches, severe, protracted, or frequent which were a disease, and the warranty of the answer "no" to such question only warrants that the insured had never had a disease of that character.

SAME—BREACH OF WARRANTY—HEADACHES. It cannot be said as a matter of law that headaches, severe, protracted, or frequent, are a disability or a disease so to as to render an insurance policy void for misrepresenting matters material to the risk.

SAME—BREACH OF WARRANTY—EVIDENCE—QUESTION FOR JURY. It is for the jury to determine whether there was a breach of warranty in an application for insurance that the insured had never had severe, protracted headaches amounting to a disease, where the company submitted proof that the insured had, for several years before making the application, had frequent and severe headaches.

INSURANCE—WARRANTIES—BURDEN OF PROOF. Where an applicant for insurance warrants that he had made true answers to questions propounded, the burden is upon him of alleging and proving the fact that his answers were not correctly written down; the medical examiner's certificate being only *prima facie* evidence of the fact.

SAME—WARRANTIES—CONSTRUCTION. Warranties in an application for insurance are strictly construed.

SAME—WARRANTIES—BREACH—EVIDENCE—SUFFICIENCY. There is no sufficient evidence to submit to the jury an issue as to breach of warranties that the insured had never consulted physicians, where it merely appeared that he had consulted a doctor to procure glasses, and on one occasion had received from a friend, a physician, a prescription for a headache; since the warranties in the policy related to diseases and not to mere temporary disorders.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered July 27, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action on policies of life insurance. Reversed.

*Richard B. Harris* (*B. C. Barrington*, of counsel), for appellant.

*Danson & Williams*, for respondent.

Gose, J.—On April 8, 1908, the appellant executed and delivered two policies of $5,000 each, whereby it insured the life of Adolph Hoeland. The loss was made payable to the executors, administrators, or assigns of the assured. The

assured died on the 8th day of September, 1908, and seasonable notice of that fact was given to the appellant. It promptly denied liability, and this action was commenced to recover upon the policies. There was a verdict and judgment for the plaintiff, and the defendant has appealed.

The appellant resists recovery upon two grounds, (1) that the insured committed suicide, and (2) breach of warranties contained in the application for the policies. The first clause in the policy recites that the applicant, "in consideration of the application for this bond which is hereby made a part of this contract, agrees to insure the life of Adolph Hoeland," etc. This application begins with the statement:

"This application, made to the Western Union Life Insurance Company of Spokane, Washington, is the basis and a part of a proposed contract for insurance. I hereby declare and warrant that I am in good health and of sober and temperate habits, that all the following statements and answers and all those that I made to the company's medical examiner in continuation of this examination, are by me warranted to be true, and are offered to the company as a consideration of the contract."

At the close of his answers in the medical examiner's report, the applicant certifies that his "answers to the foregoing questions are correctly recorded by the medical examiner." In the medical examiner's report the appellant was asked: "Have you ever had any of the following diseases? Of each illness state date, number of attacks, duration, severity, complications and results." This question is followed by an enumeration of diseases, including epilepsy, paralysis, apoplexy, and diseases of the nervous system. The next question is: "Headaches—severe, protracted, or frequent?" To which the applicant answered: "No." This is followed by numerous inquiries as to other diseases. The applicant was then interrogated and answered as follows:

"Q. Give name and address of physician last consulted. A. Dr. August Caille, New York. Q. When was he consulted? A. Fifteen years ago. Q. State nature of complaint. A.

Severe cold.  Q.  Duration of complaint.  A.  About one week.  Q.  Do you now use, or have you ever used, opiates, chloral, cocaine, or any other narcotic drug?  If so, to what extent?  A.  No.  Q.  Are you now in good health so far as you know or believe?  A.  Yes."

The breaches of warranty alleged as constituting the second defense are that each of these answers was false; that the applicant was at the time he made the application, and had been for a long time, afflicted with severe and frequent headaches; that he had often consulted a physician regarding them; that for a long time prior thereto he had been using opiates and other narcotic drugs, and that he was not in good health as he well knew.  At the close of the testimony, the court withdrew from the jury all questions relating to any breach of warranties, but submitted the case on the defense of suicide.  The jury returned a general verdict for the amount of the policies.

The appellant contends that the answers which we have set out are warranties under the stipulations of the contract, whilst the respondent insists that they are only representations, or the expression of the opinion of the assured, as to the matters inquired of.  We think the appellant's contention in this respect is correct.  The rule is that, when a representation made by an applicant for insurance is carried into a contract and expressly made a part of it, it becomes a warranty, and its materiality is settled by the agreement of the parties.  Elliott, Insurance, § 102; *White v. Provident Sav. Life Assur. Soc.*, 163 Mass. 108, 39 N. E. 771, 27 L. R. A. 398; *Rice v. Fidelity & Deposit Co.*, 103 Fed. 427.  The difference in legal effect between a warranty and a representation is that the falsity in a warranty in any particular is fatal to a recovery upon the policy, whilst a representation to have that effect must refer to some fact material to the insurance, and it must be false or fraudulent.  *Weigle v. Cascade Fire & Marine Ins. Co.*, 12 Wash. 449, 41 Pac. 53; Elliott, Insurance, § 114.

Our first duty is to ascertain with precision what the warranty is. The only purpose of the application and the questions propounded was to discover whether the applicant was a desirable risk. The true meaning of the question first propounded is, had the applicant had headaches, severe, protracted, or frequent, which were a disease. The appellant was not interested in knowing whether the applicant had ever had a headache. As its medical examiner well said in testifying in this case, every one has headaches. The appellant, however, was not concerned about trifling ailments which every one has and which are forgotten as soon as the disorder disappears. But it was concerned about diseases. That it was inquiring about diseases is the only logical deduction from the language employed. The warranty then is that the insured never had a disease of the character mentioned.

This view has abundant support in the adjudged cases. In *Black v. Travelers' Ins. Co.*, 121 Fed. 732, the insured warranted that he had never had "any bodily or mental infirmity." He had, however, while a soldier in the Civil War, received a gunshot wound in the back of the head, by which the exterior table of the skull was fractured and a small piece had been removed, leaving a slight depression of the inner table. He was receiving a pension at the date of his application, on account of vertigo and impaired vision resulting from the wound. The court held that the injury could not be held a bodily infirmity as a matter of law, and that such question, together with the fact that the insured was receiving a disability pension when he made the application, was a question to be submitted to the jury. In *Connecticut Life Ins. Co. v. Union Trust Co.*, 112 U. S. 250, the application was made a part of the policy. The insured was directed to answer "Yes" or "No" as to whether he had ever had certain diseases, among which was included "affection of the liver," to which he answered, "No." The court held that the company sought to know whether the liver had been

so affected that its ordinary operations were seriously dis-
turbed or its vital powers materially weakened; that it was
not contemplated that the insured could recall every instance
of accidental disorder or ailment that affected the liver, which
lasted but for a brief period and was unattended by sub-
stantial injury or inconvenience or prolonged suffering; that
unless he had an affection of the liver amounting to a condi-
tion so well defined and marked as to materially derange for
a time the functions of that organ, the answer was fair and
true.

In *Mutual Life Ins. Co. v. Simpson*, 88 Tex. 333, 31 S. W.
501, 53 Am. St. 757, 28 L. R. A. 765, the court, in consider-
ing the meaning of the words "headaches—severe, prolonged,
or frequent," held that, if the disability inquired about was
not inherent but was produced by extraordinary conditions
such as excessive work, fatigue, and loss of sleep, the answer
"No" was not untrue. In *Insurance Co. v. Trefz*, 104 U. S.
197, the applicant answered the question whether he had had
any of the enumerated diseases, including "disease of the
brain:" "Never sick." It was contended that he had had a
sunstroke which was a brain disease. The court said that it
was for the jury to determine whether he had had a sunstroke
and whether, if so, it was a disease of the brain. A like
principle is announced in *Starr v. Aetna Life Ins. Co.*, 41
Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636; *Rupert v.
Supreme Court U. O. F.*, 94 Minn. 293, 102 N. W. 715, and
*Rand v. Provident Sav. Life Assurance Society*, 97 Tenn.
291, 37 S. W. 7. Evidence was submitted by the appellant
tending to show that the insured, for several years before
making the application, had had frequent and severe head-
aches. The question whether they were of such a nature as
to be classed as a disease should have been submitted to the
jury.

The respondent, however, asserts that, if the contract be
construed as a warranty, the applicant did not warrant that
the medical examiner correctly recorded his answers. He did,

however, warrant that he made true answers to the questions propounded. If the answers were not correctly written by the medical examiner, the burden of alleging and proving that fact is on the respondent. It is true that the appellant certified that his answers were correctly recorded. The certificate, however, is only *prima facie* evidence of that fact. The medical examiner was the agent of the appellant, and referred to in the application as its medical examiner. Without this statement, however, we cannot shut our eyes to the fact that insurance companies always select the medical examiner. The appellant cannot change the fundamental law of agency by exacting a certificate from the insured stating that his answers are correctly written. Warranties in contracts of insurance are construed strictly, and will not be extended to include anything not necessarily implied in their terms. 16 Am. & Eng. Ency. Law (2d ed.), 927; *Equitable Life Ins. Co. v. Hazlewood,* 75 Tex. 338, 12 S. W. 621, 16 Am. St. 893, 7 L. R. A. 217; *Foster v. Pioneer Mut. Ins. Ass'n,* 37 Wash. 288, 79 Pac. 798; *Endowment Rank K. O. P. v. Cogbill,* 99 Tenn. 28, 41 S. W. 340; *New York Life Ins. Co. v. Russell,* 77 Fed. 94.

There was not sufficient evidence as to the applicant having consulted physicians, other than at the time stated in his answer, to carry the case to the jury on that question. The fact that he consulted a doctor and procured glasses is clearly not within the purview of the question asked or the information sought. The prescription for chloral hydrate and bromide of potassium on one occasion, about the year 1903, was given, as the doctor said, because the insured complained that the worry of business had caused sleeplessness and given him a headache. The questions and answers in the application, although carried into the contract by express language, must receive a reasonable construction. The general rule applicable to the interpretation of contracts and statutes, that a construction that leads to absurdities shall be avoided, may well be employed here. As we have said, the

inquiry related to diseases, and the contract cannot be held for naught because a physician, a personal friend of the insured, prescribed for him for a headache occasioned by temporary worry over business, several years before the application was made, and because the insured failed to state that fact. Mere temporary disorders were not within the contemplation of the parties. They are rarely remembered and, if not forgotten, it would hardly occur to an applicant for insurance that they were within the scope of the inquiry. *Blumenthal v. Berkshire Life Ins. Co.*, 134 Mich. 216, 96 N. W. 17, 104 Am. St. 604. The same may be said of the taking of the chloral hydrate and bromide of potassium on the occasion mentioned in the testimony. The issue as to suicide was determined adversely to the appellant and no error is assigned thereon.

The judgment will be reversed, and the case remanded with directions to grant a new trial on the issues raised by the denials and the second affirmative defense.

RUDKIN, C. J., CHADWICK, and FULLERTON, JJ., concur.