[No. 9817.   Department One.   January 29, 1912.]

SUSAN O. SHULTICE, *Respondent*, v. MODERN WOODMEN OF AMERICA, *Appellant*.[1]

BENEFICIAL ASSOCIATIONS—AGENTS—CLERK OF LOCAL CAMP — BY-LAWS. The clerk of a local camp of a fraternal beneficial society is the agent of the society, and his knowledge is its knowledge, notwithstanding by-laws to the contrary effect, where he was the officer who collects, receipts for, and transmits the assessments, and the society had no other fund from which to pay death losses and no other means of collecting the assessments.

BENEFICIAL ASSOCIATIONS—FORFEITURE OF MEMBERSHIP—NONPAYMENT OF DUES—BY-LAWS—WAIVER—POWERS OF LOCAL AGENT. Notwithstanding by-laws of a fraternal beneficial society limiting the right of delinquent members to reinstatement to those in good health, and providing that no local camp or officer can waive the by-laws, the society is liable on a death loss, where, after knowledge of suspen-

[1]Reported in 120 Pac. 531.

3—67 WASH.

sion, it accepted and retained his monthly assessments, collected and transmitted by the local clerk with knowledge that the member had become insane; such notice of bad health to the local clerk being notice to the society whether communicated or not.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered February 20, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a life insurance certificate.    Affirmed.

*Davis & Rhodes (Benjamin D. Smith*, of counsel), for appellant.

*Samuel T. Crane* and *H. M. Stephens*, for respondent.

Gose, J.—The plaintiff brought this suit to recover upon a beneficiary certificate, issued by the defendant upon the life of her husband.    There was a verdict and judgment in her favor, from which the defendant has appealed.

The appellant is a foreign corporation, organized and doing business as a fraternal beneficiary society.    It has subordinate lodges called local camps, in this and other states in the Union.    On the 6th day of October, 1899, it issued its benefit certificate in the sum of $2,000 to Henry J. Shultice, payable to respondent upon the death of the insured.    By the terms of the application, the by-laws of the appellant became a part of the contract of insurance.    The by-laws provide that a beneficial member who shall fail to pay a benefit assessment on or before the last day of the month following the levy thereof "shall *ipso facto* become suspended, and during such suspension his benefit certificate shall be absolutely null and void."    They further provide that any member so suspended may be reinstated within sixty days from the date of suspension, by a payment of all arrearages, including current assessments, etc., provided he be in good health at the time of the reinstatement; "provided, further, that the receipt and retention of such assessments or dues in case the suspended neighbor is not in good health or is engaged in any such prohibited occupation, shall not have the effect of rein-

stating said member or entitling him or his beneficiaries to any rights under his benefit certificate." No method is provided for determining the health of a member seeking reinstatement. The by-laws also provide that no local camp, nor any of its officers, shall have the power to waive any by-law, and that the clerk of the local camp is the agent of that camp and not the agent of the society, and that no act or omission on his part shall create a liability against the appellant or waive any of its rights.

The insured became an inmate of the hospital for the insane, at Medical Lake, on August 12, 1908, and died at the hospital while an inmate thereof, on April 5, 1910. He was not in good health during that time. The respondent made timely payment of his assessments after he became an inmate of the hospital, until June, 1909. The assessments for June and July, 1909, were paid at her request by the local camp at Spokane on September 13, 1909. Thereafter all assessments were regularly paid, either by the respondent or the local camp, until the death of the deceased. The clerk of the local camp reported the suspension of the deceased to the appellant shortly after August 1, 1909, for the nonpayment of the June assessment. After September 13, 1909, he made regular remittances of the assessments to the appellant. On July 14, 1910, the appellant tendered to the respondent all assessments paid after the date of the suspension of the deceased. The respondent and her agent testified that, after the suspension and before the reinstatement of the deceased, they told the clerk of the local camp at Spokane that the deceased had been committed to the asylum. This was denied by the clerk. The court instructed the jury that, notwithstanding the provisions of the by-laws, the appellant is liable upon the certificate, if it, through its local agent, received and retained the assessments after the suspension, with knowledge that the deceased was not in good health; that the knowledge of the local agent having authority to receive and collect delinquent assessments was the knowledge of the ap-

pellant; that the appellant could waive the provisions of the by-laws with reference to the suspension of a delinquent member, and that it is liable to the respondent if it received and retained delinquent assessments with knowledge of the good or bad health of the deceased.

This instruction presents the principal question in the case. The appellant contends that the question of the agency of the clerk of the local camp is settled by the contract. On the other hand, the respondent contends that the question of agency is one of law to be determined from all the facts and circumstances in the case; in other words, to be determined from the actual, rather than the fictitious, relations of the parties. We think the instruction correctly states the law. The appellant, as we have seen, is a foreign corporation. It can only act through its local camps. The clerk of the local camp is the officer who collects, receipts for, and transmits the assessments. The appellant has no other fund from which to pay its death losses, and no other means of collecting assessments. A corporation can act only through its officers and agents. This court has consistently and steadfastly adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact and law its agents. *Mesterman v. Home Mut. Ins. Co.*, 5 Wash. 524, 32 Pac. 458, 34 Am. St. 877; *Hart v. Niagara Fire Ins. Co.*, 9 Wash. 620, 38 Pac. 213, 27 L. R. A. 86; *Foster v. Pioneer Mut. Ins. Assn.*, 37 Wash. 288, 79 Pac. 798; *Hall v. Union Cent. Life Ins. Co.*, 23 Wash. 610, 63 Pac. 505, 83 Am. St. 844, 51 L. R. A. 288; *Staats v. Pioneer Ins. Assn.*, 55 Wash. 51, 104 Pac. 185; *Hoeland v. Western Union Life Ins. Co.*, 58 Wash. 100, 107 Pac. 866; *Schuster v. Knights & Ladies of Security*, 60 Wash. 42, 110 Pac. 680, 140 Am. St. 905.

The precise question was before the court in *Hart v. Ni-*

*agara Fire Ins. Co., supra,* where the court, at page 624, said:

"If, under the legal, well established and universally understood definition of agency, the solicitor is in law and in fact the agent of the company, it should not be allowed to escape its responsibilities by a simple device of words which flatly contradict the true meaning of the contract."

In the *Staats* case, we said that, "A corporation can act only through its agents and they must be held to have such power as inheres in the duties they are assigned to perform." In the *Hoeland* case we said: "The appellant cannot change the fundamental law of agency by exacting a certificate from the insured, stating that his answers [to the medical examiners] are correctly written." In the *Schuster* case we said that the local secretary was the agent of the head society notwithstanding the by-law to the contrary. This view has the support of the following cases from other jurisdictions: *Pringle v. Modern Woodmen etc.,* 76 Neb. 384, 107 N. W. 756, 113 N. W. 231; *Supreme Lodge etc. v. Davis,* 26 Colo. 252, 58 Pac. 595; *Modern Woodmen etc. v. Lane,* 62 Neb. 89, 86 N. W. 943; *High Court etc. v. Schweitzer,* 171 Ill. 325, 49 N. E. 506; *Coverdale v. Royal Arcanum etc.,* 193 Ill. 91, 61 N. E. 915; *Alexander v. Grand Lodge etc.,* 119 Iowa 519, 93 N. W. 508; *Brotherhood of Painters v. Moore,* 36 Ind. App. 580; *Sovereign Camp etc. v. Carrington,* 41 Tex. Civ. App. 29, 90 S. W. 921; *Johanson v. Grand Lodge etc.,* 31 Utah 45, 86 Pac. 494; *Hoffman v. Supreme Council etc.,* 35 Fed. 252; *Court of Honor v. Dinger,* 221 Ill. 176, 77 N. E. 557; *McMahon v. Supreme Tent etc.,* 151 Mo. 522, 52 S. W. 384; *Supreme Lodge etc. v. Jones,* 35 Ind. App. 121, 69 N. E. 718.

The *McMahon* case thus states the rule:

"The laws of the order declare the subordinate tent and the officers thereof to be the agents of the member in his dealings with the supreme tent. But there is no merit in the proposition. The law will determine whose agent one is,

not from the mere declaration that he is the agent of the one or the other, but from the source of his appointment, and the nature of the duties he is appointed to perform."

In *Supreme Lodge etc. v. Jones, supra,* it is said:

"Notwithstanding the fact that it is declared by the laws of the order that the officer charged with receiving from the members and remitting assessments to the supreme lodge shall be the agent for the local lodge, yet it is firmly settled by the authorities that in that respect he will be regarded as the agent of the grand lodge."

It follows, we think, as a corollary, that the knowledge of the local agent will be conclusively held to be the knowledge of the appellant without regard to whether he communicated the facts to it. Any other view would destroy the benefit flowing from the fact of notice to the agent. *Mesterman v. Home Mut. Ins. Co., Hart v. Niagara Fire Ins. Co., Staats v. Pioneer Ins. Assn., Modern Woodmen v. Lane,* and *Supreme Lodge etc. v. Davis, supra.*

In discussing the question in the *Mesterman* case, we said:

"If, on the contrary, it was acting as the agent of the appellant, the knowledge which it had was in law the knowledge of the appellant, whether communicated to it or not."

In the *Lane* case the court said: "The knowledge of the local clerk was probably chargeable to the defendant." In the *Davis* case it is said:

"It will also be presumed that he has communicated all information to the order which he obtains in the discharge of his duties in making collections on its behalf which affects its rights; or, if he has not, still, the order having intrusted him with the particular business, the member paying his assessments to him has the right to deem his acts and knowledge those of the order; or, otherwise stated, the agent authorized by the association to accept money for its benefit must necessarily be charged with knowledge of all facts accompanying and affecting its acceptance."

The appellant, with knowledge of the suspension of the deceased, and with knowledge through its agent of the fact

that the deceased was insane, accepted the assessments for
the months of June, July, and August, in the month of Sep-
tember, and thereafter accepted and retained his monthly as-
sessments to the date of his death.    This clearly constituted
a waiver of the by-laws limiting the right to reinstatement to
those in good health.    *Staats v. Pioneer Ins. Assn.*, *Hart v.
Niagara Fire Ins. Co.*, and *Schuster v. Knights and Ladies
of Security*, *supra*.    In announcing this view we have not
overlooked the provision in the by-law relating to the reten-
tion of assessments.    Speaking to a like by-law in the *Schus-
ter* case, we said:

"We are not unmindful of the language of the by-law
quoted, but we are unwilling to stand sponsor for a principle
of law which would uphold such a stipulation.    The language
seemingly has reference to the retention of assessments by
local officers.    But if it includes the retention by the re-
spondent, the injustice of the provision is too glaring to re-
ceive judicial sanction."

It is argued that this view is opposed to the rule an-
nounced in *Sheridan v. Modern Woodmen etc.*, 44 Wash. 230,
87 Pac. 127, 120 Am. St. 987.    In that case the suspension
of the assured continued for more than two years prior to his
death without any offer upon the part of any one to pay his
dues or assessments.

We deem it proper to say that the appellant has cited
cases from other jurisdictions which hold that a by-law
which provides that the local secretary shall be deemed the
agent of the local order, and not of the head order, will be
given force.    It has cited other cases which hold that, while
the local officer is the agent of the head lodge notwithstanding
the by-law to the contrary, his powers are limited by the by-
laws, and that those holding beneficiary certificates are
charged with notice of the limitation thus imposed upon his
agency, and that notice to such agent of the bad health of
the insured is not notice to the principal unless actually com-
municated to it.    This court, however, as we have seen, has
held from the beginning that it will determine both the ques-

tion of agency and the power of the agent from the actual, rather than the fictitious, relations of the parties. This, we think, is the more wholesome rule.

It is suggested that the court erred in sustaining objections to certain questions, propounded to respondent upon her cross-examination, touching the payment of certain assessments. There was no error in the ruling of the court, as the undisputed testimony shows that the June assessment was not paid until September. The appellant's testimony shows that the assessments were thereafter regularly paid. The other assignments do not require separate consideration.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.